STATE of Missouri, ex rel., Lucretia WADE, Relator,

v.

The Honorable Thomas FRAWLEY, Circuit Judge, St. Louis City Circuit Court, Division No. 15, Respondent.

No. 73529.

Missouri Court of Appeals, Eastern District, Writ Division Two.

April 21, 1998.

Lester H. Goldman, St. Louis, for relator.

Rick L. Nelson, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Relator ("mother") sought our preliminary order in prohibition to prevent enforcement of respondent judge's order requiring her and her son ("child") to submit to blood tests. The order was entered following a motion filed by the father to vacate a prior consent judgment of paternity and to compel mother and child to submit to blood tests. We issued a preliminary order in prohibition on November 26, 1997. We make our preliminary order permanent in that a proper cause of action seeking to show nonexistence of presumed paternity under the Uniform Parentage Act ("UPA") was not filed and, therefore, respondent judge lacked jurisdiction to order mother and child to submit to blood tests.

Mother gave birth to child on August 19, 1984. A few months later, father signed a Paternity Statement and Agreement which acknowledged that he was child's natural fa-

ther. A consent order incorporating that agreement was entered on January 31, 1985.

More than twelve years later, on July 15, 1997, father filed a motion asking the circuit court to set aside the judgment of paternity based on extrinsic fraud and requesting the court to compel mother and child to submit to blood tests. In support of the motion, father alleged that he had previously "stated he was the father of the child because [mother] assured him that he was." He further alleged that "on several occasions the mother of the minor has told other people that [he] is not the father of the child," and "[s]he also told the child not to ask her any questions because he might find out information he does not want to know."

On October 2, 1997, respondent entered an order granting father's motion to compel blood tests and ordering mother and child to submit to testing within 60 days. Our preliminary order followed.

■ Missouri's adoption of the Uniform Parentage Act first appeared at sections 210.817—.852 RSMo Supp.1988.[1] Under section 210.834, the court is instructed, when a party so requests, to require the child, mother, or alleged father in an action brought under the Act to undergo genetic tests. Mother correctly asserts, however, that father's motion to vacate and to compel blood tests failed to meet the pleading requirements of the UPA and, therefore, the UPA's authority to compel blood tests had not been invoked.

Generally, the UPA is the exclusive method for determining paternity in Missouri. *Roberts v. Roberts,* 920 S.W.2d 144, 146 (Mo. App.1996). Further, section 210.830 provides that "[t]he child shall be made a party to any action commenced under sections 210.817 to 210.852." Father's motion fails to name the child as a party. Father's motion, therefore, is not an action under the UPA and cannot invoke section 210.834's authority to require genetic tests.

Father contends, however, that his request for blood tests is not for the purpose of determining paternity or non-paternity, but to establish fraud by mother in order to support his Rule 74.06(b) motion to vacate.

Rule 74.06(b) provides that "[o]n motion ... the court may relieve a party ... from a final judgment or order for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

■ Father's motion to vacate under Rule 74.06(b) claimed extrinsic fraud by mother in obtaining the original consent order in 1985. Blood test results, however, are irrelevant to father's theory of extrinsic fraud. Even if the blood test results demonstrate that father is not child's natural father, they would not have any bearing on his allegations of fraud by mother. Test results cannot demonstrate father's state of mind at the time he signed the paternity agreement. Neither can such results demonstrate that mother assured father he was the child's father, nor that she was aware that he was not the father.

■ Because blood test results are irrelevant to father's allegations of extrinsic fraud, father clearly intends to use the blood tests to demonstrate the nonexistence of the father and child relationship. The judgment of paternity entered by consent in 1985 established father's paternity of child. Section 210.822.1(3). Section 210.826.1(2) allowed a presumed father to file an action under the UPA for the purpose of establishing the nonexistence of a presumed father and child relationship "only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth." Child was born on August 19, 1984. The limitations period for father's action, therefore, expired on August 19, 1989. *State ex rel. Lucas v. Wilson,* 963 S.W.2d 408, 412–13 (Mo.App. 1998).

But father argues that Rule 74.06(b) provides the court with authority to vacate the consent judgment. The Rules of Civil Procedure flow from the Supreme Court's constitutional authority to regulate practice, procedure and pleadings for all courts. Mo. CONST. art. V, section 5. The constitution's

---

**1.** Statutory references hereinafter are to RSMo Supp.1988 unless otherwise indicated.

express limitation that rules should "not change substantive rights" prohibits the use of such power to create jurisdiction. Mo. CONST. art. V, section 5; *Glasby v. State*, 739 S.W.2d 769, 771 (Mo.App.1987). While statutes of limitation are generally seen as procedural in Missouri,[2] they do create a substantive right which predominates in this case in that the limitations period has expired.

■ "[O]nce the original statute of limitation expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit, a right that is substantive in nature." *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. banc 1993). Thus, a procedural rule cannot override the substantive aspects of a statute of limitations. Furthermore, a change in the statute of limitations will not revive a cause of action which has already expired. *Michigan Dept. of Social Services ex rel. D.H. v. K.S.*, 875 S.W.2d 597, 601 (Mo.App.1994).

Permitting father to reopen the twelve-year-old paternity adjudication under Rule 74.06(b) would conflict with Section 210.826.1. The essential purpose of the UPA, to establish a uniform method for determining paternity which would protect the rights of all parties involved, especially children,[3] would be frustrated by application of Rule 74.06 to these facts. Father's cause of action under the UPA is time barred, and he cannot use Rule 74.06(b) to circumscribe that.

We find that father's motion to vacate cannot provide authority to compel blood tests. Accordingly we order that our preliminary order of prohibition now be made permanent and direct respondent to quash the order to compel blood tests.

CRANDALL and HOFF, JJ., concur.

---

**2.** *Consolidated Financial Investments, Inc. v. Manion*, 948 S.W.2d 222, 224 (Mo.App.1997).

**3.** *Piel v. Piel*, 918 S.W.2d 373, 375 (Mo.App. 1996).