STATE ex rel. STATE of Missouri, DE-
PARTMENT OF SOCIAL SERVICES,
FAMILY SUPPORT DIVISION, Rela-
tor,

v.

The Honorable Patrick W.
CAMPBELL, Respondent.

No. WD 75408.

Missouri Court of Appeals,
Western District.

Nov. 27, 2012.

Jo–Ellen Horn and Nicolas Taulbee,
Kansas City, MO, for relator.

Donald H. Loudon, Jr., Independence,
MO, for respondent.

Before Writ Division: CYNTHIA L.
MARTIN, Presiding Judge, VICTOR C.
HOWARD, Judge and THOMAS H.
NEWTON, Judge.

CYNTHIA L. MARTIN, Judge.

State ex rel. State of Missouri, Depart-
ment of Social Services, Family Support
Division ("FSD," "State," or "Relator")
seeks a permanent writ of prohibition to
prevent enforcement of an order issued by
the Honorable Patrick W. Campbell ("Re-
spondent") directing the State to advance
the cost of genetic paternity testing in an
action seeking to set aside a judgment of
paternity pursuant to section 210.854. We
issued a preliminary writ of prohibition.
Our preliminary writ of prohibition is
made absolute.

### Factual and Procedural Summary

On December 9, 2011, Gregory Alan Fields ("Fields") filed a Petition to Set Aside Judgment of Paternity and Support pursuant to section 210.854 [1] ("Petition"). Fields sought to set aside judgments entered in the Circuit Court of Jackson County, Missouri on August 6, 1997, and May 20, 2000, which (according to Fields) [2] declared Fields to be the father of two children: RAF–C (born July 26, 1996), and CML, Jr. (born October 4, 1997). The Petition named the two minor children, the mother of the children, a man alleged by Fields to be the father of the children, and FSD [3] as "defendants."

On July 12, 2012, Respondent entered an order requiring the minor children identified in the Petition to present for genetic paternity testing at Paternity Testing Corporation, a qualified paternity testing facility ("Order"). The Order directed that "Petitioner State of Missouri, shall advance the cost of said testing for the minor children ... Final responsibility for payment of such costs shall be determined at a later hearing." Though the Order called the State the "petitioner," the case caption of the Order identifies Fields as the "petitioner" and all of the "defendants" named by Fields in the Petition (including FSD) as "respondents."

FSD filed a Petition for Writ of Prohibition in this court on September 7, 2012. FSD argued that section 210.854.3 requires Fields to pay the cost of genetic paternity testing ordered pursuant to section 210.854. Pending receipt of suggestions in opposition, we stayed enforcement of the Order with the exception that Re-spondent remained free to modify the Order to require Fields to advance the cost of genetic paternity testing. Respondent did not modify the Order.

On August 8, 2012, we issued a Preliminary Writ of Prohibition prohibiting Respondent from enforcing his Order insofar as it required the State to advance the cost of genetic paternity testing. The Preliminary Writ permitted Respondent to modify the Order to require Fields to advance the cost of genetic paternity testing. Respondent has not modified the Order.

### Analysis

Section 210.854 was enacted in 2009. It creates a right to seek to set aside an otherwise final, non-appealable judgment determining paternity and to unwind the financial and criminal ramifications of non-support resulting from the judgment. A petition seeking relief under section 210.854 was required to be filed prior to December 31, 2011, and thereafter could only be filed within two years of the entry of a judgment of paternity. Section 210.854.1. A petition seeking relief under section 210.854 is to be filed "in the county which entered the judgment or judgments of paternity and support." *Id.* Fields's Petition was filed December 9, 2011.

Section 210.854.2 requires the petition to "include an affidavit executed by the petitioner alleging that evidence exists which was not considered before entry of judgment," and *either* that a DNA test conducted within ninety days of the petition excludes the petitioner as the father, *or* "[a] request to the court for an order of genetic paternity testing using DNA meth-

---

1. All statutory references are to RSMO 2000 as supplemented unless otherwise noted.

2. The underlying judgments are not a part of the record.

3. Section 210.854.1 requires naming FSD as a party if the children identified in a petition filed pursuant to section 210.854 received IV–D services as defined in subdivision (8) of section 454.460.

odology." If DNA testing is requested, Section 210.854.3 requires the court to conduct an evidentiary hearing to determine whether "probable cause [exists] to believe said testing may result in a determination of nonpaternity," in which case the court *"shall* order the relevant parties to submit to genetic paternity testing." (Emphasis added). Section 210.854.3 then provides that *"[t]he genetic paternity testing costs shall be paid by the petitioner." Id.* (emphasis added).

Fields's Petition requested an order of genetic paternity testing pursuant to section 210.854.2. Respondent thus entered his Order pursuant to section 210.854.3 requiring the minor children identified in the Petition to present for genetic paternity testing. As noted, however, the Order did not require Fields, as the petitioner, to pay for the genetic paternity testing. Instead, the Order required the State "to advance the cost of said testing," and noted that "[f]inal responsibility for payment of such costs shall be determined at a later hearing."

 Respondent did not have the authority or the discretion to impose the obligation to pay for section 210.854.3 genetic paternity testing on the State, temporarily or otherwise. The plain language of section 210.854.3 provides that Fields, the petitioner who initiated the section 210.854 action, *"shall"* pay the cost of genetic paternity testing. There is nothing ambiguous about this directive. "If the provisions of a statute are express and unambiguous, the court is not at liberty to construe the language ... because the court functions to enforce the law as it is written." *State ex rel. Igoe v. Bradford,* 611 S.W.2d 343, 349 (Mo.App.1980).

Respondent argues [4] that notwithstanding the clarity of section 210.854.3, he allowed Fields to pursue his section 210.854 case *in forma pauperis,* and that Fields is thus guaranteed access to "all necessary process and proceedings as in other cases without fees, tax, or charge." Section 514.040.1. Respondent argues the cost of genetic paternity testing ordered under section 210.854.3 is a fee, tax, or charge within the scope of section 514.040.1, and that Fields cannot be compelled to pay said cost.

Respondent's argument is irrelevant to the issue before us. It is immaterial whether Fields has been permitted to pursue his section 210.854 action *in forma pauperis,*[5] or whether the cost of genetic

4. Respondent's interests in this action are being represented by the attorney for Fields. The Order is silent with respect to any explanation for Respondent's decision to impose the obligation to advance the cost of genetic paternity testing on the State. We have no way of verifying, therefore, whether Respondent's rationale for the Order is, in fact, the rationale argued by Fields's counsel.

5. We question this assertion, although we need not determine its accuracy. There is nothing in the record indicating that Fields has been given court authority, or has otherwise been certified, to pursue his section 210.854 Petition *in forma pauperis* in accordance with the procedures set forth in section 514.040. Though Respondent has provided us with an order finding him to be indigent in

a separate proceeding which sought to enforce Fields's child support obligations for different minor children than those involved in this case, Respondent cites no authority for the proposition that an *in forma pauperis* determination in one proceeding automatically extends to a later initiated proceeding. And even if Respondent's supposition is accurate, we are at a loss to understand why the record does not then reflect a waiver of the filing fee for Fields's Petition, or why the record reflects that Respondent entered an order in this case on April 4, 2012, appointing a guardian ad litem and ordering Fields "to deposit $500.00 into the Trust account of [the GAL] as security for costs to be applied to her fees in this matter." *See Holterman v. Patterson,* 24 S.W.3d 784, 785–86 (Mo.App. E.D. 2000) (holding mother who was *properly* cer-

paternity testing is a fee, tax, or charge within the scope of section 510.040.1 Even if we accept, *arguendo,* both premises as true, Respondent fails to identify the source of his authority to shift Fields's statutory obligation to pay for section 210.854.3 genetic paternity testing to the State.

"Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials." *Richardson v. State Highway & Transp. Com'n,* 863 S.W.2d 876, 882 (Mo. banc 1993) (citations omitted). "When the General Assembly waives [sovereign] immunity regarding costs, it does so explicitly." *Id.*[6] Referring expressly to Chapter 514 RSMo., the Supreme Court in *Richardson* held that "[t]he legislature has enacted several laws about costs in civil cases, *none of which authorize awarding costs against the sovereign. Chap. 514 RSMo." Id.* (emphasis added). Thus, even assuming Fields's status as an indigent under section 514.040, and even assuming genetic paternity testing costs are "costs" under section 514.040, the obligation to pay costs which would otherwise be Fields's responsibility cannot be shifted to the State.

Though not raised by Respondent,[7] we are aware that separate and apart from section 210.854.3, section 210.834.1 provides a *second* means by which a court can order parties in a paternity proceeding to submit to blood tests. Section 210.834.1 provides in pertinent part that:

> The court may, and upon request of any party shall require the child, mother, alleged father, any presumed father who is a party to *the action,* and any male witness who testifies or shall testify about his sexual relations with the mother at the possible time of conception, to submit to blood tests.

(Emphasis added.) Section 210.834 is a part of the Uniform Parentage Act, sections 210.817 to 210.852, enacted in 1987. "The action" referred to in section 210.834.1 is an action pursuant to section 210.826.1 or .2 to *determine* "the existence of the father and child relationship" in the first instance.

In connection with blood tests ordered in a section 210.826 action to *determine* paternity, section 210.834.4 provides:

> Whenever the court finds that the results of *the blood tests* show that a person presumed or alleged to be the father of the child is not the father of such child, such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to that party, and the cost of such blood tests shall be assessed against the party instituting the action unless the division of child support enforcement, through a prosecuting attorney or circuit attorney or other attorney under contract with such division, is a party to such action, in which case the cost of *such blood tests*

---

tified as indigent under section 510.040.3 could not be ordered to pay GAL fees).

We are not suggesting, however, that it is too late for Fields to seek an order finding him to be indigent. We are aware of no authority that requires such a request to be made at the earliest possible time in a proceeding. *See, e.g., Versey v. Jirak,* 219 S.W.3d 774, 777 (Mo.App. E.D.2007) (holding that litigant who filed legal services certification of indigent status pursuant to section 514.040.3 after one trial date and before a second trial date was not prohibited from securing the benefit of the certification, as "section 514.040.3 does not require a party to file certification at a certain point during litigation").

**6.** *See, e.g.,* section 550.020 (criminal costs); section 536.087 (unjustified positions by state agencies in contested administrative cases).

**7.** See footnote 4.

shall be assessed against the state. The court shall order the state to pay reasonable attorney's fees for counsel and the costs of any blood tests where *such blood tests show that the person presumed or alleged to be the father* of the child is not the father of the child and the state proceeds further in an action *pursuant to sections 210.817 to 210.852* to attempt to establish that such person is the father of the child.

(Emphasis added.) This provision, by its terms, does not address section 210.854 proceedings, and does not address circumstances where a person has already been determined by a judgment of paternity to be the father, and is seeking to set that judgment aside.

Section 210.842, titled "Costs," provides: The court may enter judgment in the amount of the reasonable fees for counsel, experts, the child's guardian ad litem and other costs of the action and pretrial proceeding, including blood tests, to be paid by the parties in such proportions and at such times as determined by the court, except that:

. . .

(2) No such costs, *other than the costs of blood tests assessed pursuant to subsection 4 of section 210.834,* shall be assessed to the state of Missouri or a political subdivision thereof.

(Emphasis added). This section makes it clear that the State can only be assessed the obligation to pay the cost of genetic paternity testing pursuant to the authority of section 210.834.4, a provision that has no application to Fields's section 210.854 proceeding.

There is a logical explanation for permitting a trial court to assign responsibility for payment of the cost of blood testing to the State in actions to *determine* paternity

but not in actions to *set aside judgments* which have already determined paternity. In enacting section 210.854, the legislature was no doubt motivated to promote the finality of any judgment declaring a father and child relationship, as the finality of such judgments is in the best interests of the children involved. Consistent with this supposition, we note that blood tests ordered in section 210.826 actions to determine paternity in the first instance are *"conclusive* of nonpaternity," such that "the court *shall* dismiss the action as to that party." Section 210.834.4. In contrast, in section 210.854 actions seeking to set aside a determination of paternity, blood tests which "indicate[ ] that the person subject to the child support payment order has been excluded as the child's father," require the court to set aside the previous judgment of paternity and support *"unless* [the court] makes written findings of fact and conclusions of law that *it is in the best interest of the parties not to do so."* Section 210.854.4 (emphasis added).

Moreover, a section 210.854 action will generally be an action initiated by a father who has failed to defend, either at all or adequately, an earlier action wherein the question of paternity has been determined and reduced to judgment. The legislature may well have desired to dissuade presumptive or alleged fathers from ignoring section 210.826 paternity proceedings by unequivocally imposing the obligation to pay for genetic paternity testing on a father who seeks to set aside a judgment of paternity or support pursuant to 210.854.

■ We conclude that even assuming, *arguendo,* that Fields has been relieved of the obligation to pay the cost of section 210.854.3 genetic paternity testing because he is indigent pursuant to section 510.040,[8]

8. *See* footnote number 5.

Respondent had no authority to require the State to advance or otherwise pay the cost.[9] Prohibition is available when a circuit court acts in "clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994). Respondent's Order is in clear excess of jurisdiction and/or is an abuse of discretion as the Respondent had no authority to impose the obligation to pay the cost of genetic paternity testing ordered pursuant to section 210.854 on the State.

### Conclusion

Our preliminary writ of prohibition is made absolute. Respondent is prohibited from enforcing that portion of his Order requiring the State to advance or otherwise pay the cost of genetic paternity testing.

All concur.

---

9. Where an indigent cannot be compelled to pay a fee or cost by the operation of section 510.040, our courts have held that the county treasury where the circuit court sits is obligated to pay the cost pursuant to section 476.270, addressing the "expenditures of courts to be paid out of county treasury." *See, e.g., Carpenter v. Carpenter*, 159 S.W.3d 880, 884 (Mo.App. S.D.2005) (directing trial court's attention to case authority regarding county's obligation to pay GAL fees that indigent party could not be ordered to pay); *State ex rel. Henderson v. Blaeuer*, 723 S.W.2d 589, 590 (Mo.App. W.D.1987) (obligating county to pay cost of service by publication for indigent in dissolution action); *Stewart v. St. Louis County*, 630 S.W.2d 127, 128 (Mo.App. E.D. 1981) (holding county treasury obligated to pay indigent's share of GAL fees); *State ex rel.*

*Taylor v. Clymer*, 503 S.W.2d 53, 57 (Mo.Ct. App. K.C.1973) (holding in dissolution proceeding that order requiring publication of notice imposed "plain duty" on county to pay the expense for indigent litigant).

We offer no opinion as to whether the paternity testing required by section 210.854.3 is a "fee, tax, or charge" associated with a "necessary process or proceeding" within the scope of section 514.040. We do note guidance on the subject can be found in *Taylor*, 503 S.W.2d 53 (addressing whether the cost of publication to effect service is "necessary process" under section 514.040) and in *State ex rel. Martin v. Wofford*, 121 Mo. 61, 25 S.W. 851, 854 (1894) (holding that "when a right exists, all the means essential and necessary to the enforcement of that right are implied").