

# In the Missouri Court of Appeals
# Eastern District

## SOUTHERN DIVISION

| | | |
|---|---|---|
| T.B. III, | ) | ED102390 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | 12CG-DR00387 |
| | ) | |
| N.B. and State of Missouri, | ) | Honorable Benjamin F. Lewis |
| Department of Social Services, | ) | |
| Family Support Division, | ) | |
| | ) | |
| Respondent. | ) | Filed: December 15, 2015 |

## Introduction

T.B. III (T.B.) appeals from the trial court's Judgment denying his petition for declaration of non-paternity. On appeal, T.B. argues that the trial court erred in finding his petition was barred by the statute of limitations, and that he is entitled to relief from the paternity judgment under Rule 74.06(d)[1] and Rule 74.06(b). We affirm.

## Background

N.B. (Mother) gave birth to T.Q.B. (the Child) on August 31, 2000. T.B. signed an affidavit acknowledging paternity of the Child. In February of 2001, the State of Missouri, Department of Social Services, Family Support Division (FSD) made an administrative

---

[1] All rule references are to Missouri Rules of Civil Procedure (2015), unless otherwise indicated.

determination declaring T.B. to be the presumed or legal father of the Child and requiring T.B. to pay child support for the Child, which T.B. did not contest because he believed he was the father. FSD filed the administrative order with the circuit court.

On August 27, 2012, T.B. filed a petition seeking a determination of non-paternity. In his first amended motion, he alleged he had acknowledged paternity and consented to the administrative order because Mother told him he was the Child's father. T.B. attached to the petition a DNA test report showing that he was not the biological father of the Child. T.B. sought relief from the 2001 paternity judgment under Rule 74.06(d), asserting that Mother had perpetuated fraud against him.

At an evidentiary hearing on T.B.'s petition, T.B. testified to the following. He and Mother had been in a relationship. When she became pregnant, she told him that he was the father, their relationship was exclusive, and no one else could be the father. When FSD entered its administrative order, T.B. did not contest it because he believed he was the Child's father. However, in 2010, sometime prior to June, Mother informed T.B. he was not the biological father of the Child. Mother explained she wanted to clear her conscience. T.B. ordered a DNA paternity test on June 3, 2010, which confirmed he was not the biological father. Although Mother was subpoenaed to appear at the evidentiary hearing, she did not appear either in person or through counsel. The Child was represented at the hearing by his court-appointed *guardian ad litem*.

The trial court found that Mother knowingly made false statements to T.B. that he was the father of the Child with the intent to induce T.B. to consent to paternity, and that T.B. relied on those statements in consenting to paternity, causing T.B. to incur thousands of dollars in

2

support liability. Thus, the trial court concluded that Mother perpetuated extrinsic fraud upon T.B.

Nevertheless, the trial court denied T.B.'s petition. The trial court concluded T.B.'s right to bring an action under Rule 74.06(d) for extrinsic fraud was foreclosed by the statutory time limit for him to contest paternity, which had run. In determining the statute of limitations, the court noted T.B. filed his petition beyond the limitations period as set forth in Section 210.854,[2] but questioned the application of Section 210.854's time limit in cases where the mother has deceived a man into believing he is the father of the child. Accordingly, the court applied Section 516.280, RSMo. (2000), which tolls the statute of limitations when a wrongdoer fraudulently conceals his actions and begins running the applicable statutory limitations period from the date of discovery. The court concluded, however, that because T.B. learned of the DNA test results in June of 2010, his petition filed in August of 2012 was too late.

T.B. filed a motion for new trial and to admit additional evidence, asserting that although the DNA tests were completed on June 15, 2010, they were not released until T.B. paid for them on May 26, 2012. Accordingly, he argued the statute of limitations did not begin to run under Section 516.280 until May 26, 2012, thus making his petition filed in August of 2012 timely. The trial court denied his motion. This appeal follows.

### Standard of Review

We will affirm the judgment in a judge-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We review *de novo* a trial court's statutory interpretations. Sutton v. Mun. Court Div., Des Peres, 462 S.W.3d 446, 448 (Mo. App. E.D. 2015). Reviewing courts are "primarily concerned with the correctness of the result, not the

---

[2] All statutory references will be to RSMo. (Cum. Supp. 2009), unless otherwise indicated.

3

route taken by the trial court to reach it; the trial court's judgment will be affirmed if it is correct on any ground supported by the record." Mo. Soybean Ass'n v. Mo. Clean Water Comm'n, 102 S.W.3d 10, 22 (Mo. banc 2003).

Discussion

Point I

In his first point on appeal, T.B. argues the trial court erred in denying his petition for determination of non-paternity as out of time, because he did not receive the results of the DNA paternity test until May 26, 2012, and he properly filed his petition within two years of that date. FSD responds the last day for T.B. to have filed his petition for non-paternity under Section 210.854 was December 31, 2011, and although the trial court properly found T.B.'s petition to be out of time, it erred in using Section 516.280 to extend the statute of limitations.

In 2009, the Missouri legislature enacted Section 210.854, which "creates a right to seek to set aside an otherwise final, non-appealable judgment determining paternity." State ex rel. State Dept. of Social Servs., Family Support Div. v. Campbell, 386 S.W.3d 229, 230 (Mo. App. W.D. 2012). The statute provides that a legal father may file a petition to set aside the paternity judgment "in the interests of justice and upon grounds set forth in this section" at any time prior to December 31, 2011, or, after that date, within two years of the entry of the original judgment of paternity. Section 210.854.1. The "grounds set forth" in this section are (1) evidence that was not considered before the entry of judgment and (2) genetic test results that exclude the putative father as the biological father of the child. Section 210.854.2.

Here, T.B. acknowledged paternity of the Child in 2000 based on false assurances from Mother that he was the only possible father, and he consented to a judgment of paternity in 2001. Under Section 210.854 he was entitled to file a petition to set aside that paternity judgment only

4

until December 31, 2011, which he did not do. Section 516.280, however, provides that when a person prevents the commencement of an action through any improper act, the applicable statute of limitations will be tolled until the discovery of the improper act. Applying Section 516.280, the trial court tolled the start of Section 210.854's two-year statute of limitations until the date T.B. discovered the results of the DNA test, which the court determined to be June 11, 2010. The court then concluded that his petition filed in August of 2012 was too late. On appeal, T.B. agrees with the trial court's application of Section 516.280 but challenges the trial court's finding that the date of discovery was June 11, 2010, and FSD argues that the court erred in applying Section 516.280. We agree with FSD.

"This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself." State ex rel. Bier v. Bigger, 178 S.W.2d 347, 350 (Mo. 1944); see also Airis v. Metro. Zoological Park & Museum Dist., 332 S.W.3d 279, 281 (Mo. App. E.D. 2011) ("[w]hen a law provides a specific statute of limitations it prevails over the general statute of limitation"). Further, Chapter 516 itself provides that Section 516.280 "shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute." Section 516.300, RSMo. (2000).

Section 210.854 is a special statute that creates a method for challenging, but also limits the time for challenging, a judgment of paternity on the basis of DNA results or other evidence not considered at the time of the entry of judgment. Section 210.854; Campbell, 386 S.W.3d at 230. It does not authorize the time limit to be extended for any reason, including fraud. Section 210.854. Because no exceptions to the limitation are written into the statute, we are not at liberty

5

to insert one. Frazee v. Partney, 314 S.W.2d 915, 919 (Mo. 1958) ("A special statute of limitations must carry its own exceptions, and we may not engraft others upon it"). Thus here, the statute of limitations as set forth in Section 210.854 applies and may not be extended or tolled by Section 516.280, despite Mother's fraudulent concealment of the Child's true parentage.

Regardless, even assuming *arguendo* that Section 516.280's tolling statute did apply, T.B. is still barred from recovery. T.B. testified that Mother told him in 2010—the record does not include the exact date or month, but presumably sometime before June 3 when he sent the DNA samples for analysis—that he was not the father of the Child. Because he discovered the fraud prior to June 3, 2010, the two-year statute of limitations would begin running by that date. Thus, his petition filed on August 27, 2012, was past the deadline to challenge a judgment of paternity.

The trial court did not err in denying T.B.'s petition as out of time. Point denied.

### Points II & III

In his second and third points on appeal, T.B. argues he was entitled to relief from the paternity judgment under Rule 74.06(b) and (d), asserting he was entitled to equitable relief due to Mother's extrinsic fraud, namely, Mother's false representations of paternity and his reliance on that false representation. For ease of analysis, we address Point III, Rule 74.06(b), first.

Following a final judgment, Rule 74.06(b) allows a court to relieve a party from the judgment on the basis of, among other things, fraud, misrepresentation, or other misconduct by the adverse party. A motion filed under Rule 74.06(b) must be filed "not more than one year after the judgment or order was entered." Rule 74.06(c). Here, the judgment of paternity was entered in 2001, making T.B.'s action filed in 2012 too late. Point III is denied.

6

Nevertheless, Rule 74.06(d) provides relief from a judgment by allowing a party at any time to bring an independent action in equity to set aside a judgment that was obtained by extrinsic fraud against the court. Walker v. Walker, 280 S.W.3d 634, 636 (Mo. App. W.D. 2009). The trial court here determined Mother had engaged in extrinsic fraud in order to induce T.B. to default or consent to a paternity judgment against him, but nevertheless found that actions for equitable relief under Rule 74.06(d) are limited by the statute of limitations associated with the underlying action. T.B. challenges the trial court's dismissal, and FSD, while it agrees with the result, argues T.B.'s allegations constitute intrinsic, not extrinsic, fraud. We disagree with the trial court's analysis but agree with its conclusion, and we find that T.B.'s inattention deprived him of a potential remedy under Rule 74.06(d).

Rule 74.06(d) is an equitable remedy that a party can bring "at any time" upon the discovery of extrinsic fraud, regardless of the statute of limitations associated with the underlying judgment. See McKarnin v. McKarnin, 795 S.W.2d 436, 439 (Mo. App. W.D. 1990) (action under Rule 74.06(d) may be brought "at any time"). The trial court here, however, limited recovery under Rule 74.06(d) on a basis unrelated to the discovery of extrinsic fraud, finding that Rule 74.06(d) is limited by statutory deadlines. Such a reading renders the rule meaningless, which we decline to do.

Nevertheless, remedy under Rule 74.06(d) is not unlimited. To obtain the relief sought on the basis of extrinsic fraud, "the complaining party must be shown to be free of fault, neglect or inattention to the case." Essig v. Essig, 921 S.W.2d 664, 667 (Mo. App. W.D. 1996). Here, T.B. neither pleaded nor proved he was free of fault, neglect, or inattention. See Reding v. Reding, 836 S.W.2d 37, 43 (Mo. App. S.D. 1992) ("[f]ailure of complaining party to allege he [or she] was free from fault, neglect, or inattention is fatal to the action"). T.B.'s petition is

7

silent on the issue. At the hearing, while he testified regarding why he did not obtain the results of the DNA test for nearly two years, he did not provide an explanation for why he failed to proceed on the basis of Mother's confession that he was not the Child's Father. T.B. discovered Mother's fraud prior to June of 2010, but he did not file his petition for declaration of non-paternity until August of 2012—over two years later. We note that he testified that he did not know about the possibility of receiving legal aid, which we presume he intended as a general explanation for his delay in moving his case forward. This explanation, however, does not excuse his complete inaction. It was incumbent upon T.B. to determine if and how to proceed in a timely manner.

There is no explicit time limit to bring an independent action under Rule 74.06(d) upon discovering the extrinsic fraud, but this Court has previously held that when a person fails to act upon the discovered extrinsic fraud for over a year, the person is barred from equitable relief. See Pope v. State, 819 S.W.2d 397, 400 (Mo. App. E.D. 1991). T.B.'s delay of over two years in filing his petition for declaration of non-paternity demonstrates a lack of attention depriving him of his right to equitable relief under Rule 74.06(d). The trial court did not err in denying T.B.'s petition for determination of non-paternity.

Although we affirm, we question the trial court's conclusion that Mother engaged in extrinsic fraud sufficient to entitle T.B. to an equitable remedy under Rule 74.069(d). What constitutes extrinsic versus intrinsic fraud is often difficult to determine. Fraud that induces a party to default or consent to a judgment against them is extrinsic fraud. Walker, 280 S.W.3d at 636. Extrinsic fraud is limited to the fraudulent procurement of a judgment; it must relate to the manner in which the judgment was obtained and not the merits of the judgment itself. Id.; see also State ex rel. Seals v. McGuire, 608 S.W.2d 407, 409 (Mo. 1980) (falsifying sheriff's return

8

to deprive party of notice was extrinsic fraud). Conversely, false averments in court pleadings, perjured testimony in court, and fabricated evidence before a court are intrinsic fraud. See e.g., Walker, 280 S.W.3d at 638; Pope, 819 S.W.2d at 399; McKarnin, 795 S.W.2d at 439-40; Vinson v. Vinson, 725 S.W.2d 121, 124 (Mo. App. E.D. 1987).

T.B. urges this Court to adopt the Western District's holding in State ex rel. Div. of Child Support Enforcement v. Hill, 53 S.W.3d 137 (Mo. App. W.D. 2001), which, as here, involved a petition for non-paternity on the basis of fraud. In Hill, the mother falsely told Hill she had submitted the child for DNA testing and the results showed Hill was the father, and in reliance on this false representation Hill consented to a judgment of paternity against him. Hill, 53 S.W.3d at 139. In fact, the mother had never submitted the child to DNA testing and Hill was not the biological father. Id. at 144. Nine years later, the father moved for relief from the paternity judgment on the basis of fraud. Id. at 139. The Western District found that the father had sufficiently pled an equitable claim for relief from the earlier paternity judgment on the basis of extrinsic fraud and was thus entitled to proceed under Rule 74.06(d). Id. at 144-45.[3]

The Western District has indicated that it intends Hill to be read broadly. See State ex rel. Lowry v. Carter, 178 S.W.3d 634, 638 n.2 (Mo. App. W.D. 2005) (citing Hill to state in dicta that where one party relied on misrepresentations of paternity by other party resulting in default judgment, that could constitute extrinsic fraud). Nevertheless, we note that since Hill and Lowry, the Missouri legislature has enacted Section 210.854 establishing a two-year statute of

---

[3] The Western District in Hill distinguished this Court's opinion in State ex rel. Wade v. Frawley, 966 S.W.2d 405 (Mo. App. E.D. 1998), noting that in Wade, the father had not properly pled a claim for extrinsic fraud sufficient to invoke Rule 74.06. State ex rel. Div. of Child Support Enforcement v. Hill, 53 S.W.3d 137 (Mo. App. W.D. 2001). Likewise, our decision in Wade does not affect our opinion here. The Wade court did not allow the trial court to order blood testing to prove extrinsic fraud, noting that blood test results alone do "not have any bearing on his allegations of fraud by mother." Wade, 966 S. W.2d at 406. Rather, the father must prove extrinsic fraud by showing the mother knowingly made a false statement about paternity at the time he signed the paternity agreement upon which he properly relied. Id. Blood test results are used to challenge paternity, and a party may only challenge paternity within the time allowed by the statute. Id.

9

limitations to bring an action challenging paternity. This is a difficult area of law in which the legislature must weigh the interests of not only the father but also the child, who will be left without one of his or her parents. The concept of fraud is inherent in Section 210.854. Section 210.854 allows a father to set aside a previous paternity judgment on the basis of later DNA test results ruling out biological paternity, but specifically limits this remedy. We note, moreover, that even where DNA results rule out paternity and the father has otherwise complied with Section 210.854, he is not absolutely entitled to relief: rather, the legislature has given the trial court the discretion to decline to set aside the previous paternity judgment where it is not in the best interest of the parties to do so. See Section 210.854.4.

If this Court was to decide that a false out-of-court statement about paternity constitutes extrinsic fraud that could invoke a trial court's equitable authority under Rule 74.06(d), such a decision would render Section 210.854's specific statute of limitations—created upon consideration of the interests of both the father and the child—a nullity. Courts should avoid interpreting statutes in a way that leaves the statutory language meaningless. Investors Alliance, LLC v. Bordeaux, 428 S.W.3d 693, 696 (Mo. App. E.D. 2014). Despite our concerns, this Court need not decide whether the legislature intended Section 210.854 to supersede the Western District's decision in Hill, because here T.B. is not entitled to relief under either Section 210.854 or Rule 74.06(d).

The trial court did not err in denying T.B.'s petition for determination of non-paternity. Point II is denied.

10

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., Judge

Lisa S. Van Amburg, C.J., concurs.
Philip M. Hess, J., concurs.

11