KURT S. ODENWALD, Presiding Judge
Introduction
Kenny Truong ("Truong") seeks reinstatement of his petition alleging that Jacinta Truong ("Mother") fraudulently, negligently, and intentionally misrepresented the paternity of Mother's middle child and caused Truong emotional damages. The circuit court dismissed Truong's petition for failure to state a claim on which relief can be granted. Because Truong seeks to recover damages not recognized by Missouri law, we affirm the circuit court's dismissal of his petition.
Factual and Procedural History
Truong and Mother were lawfully married. Prior to their marriage, while Truong and Mother were dating, Mother gave birth to two children.[1] A paternity judgment deemed that Truong is First Child's biological father. Truong's name was recorded as the father on Second Child's birth certificate. Truong and Mother subsequently married, and Third Child was born during the marriage.
Truong and Mother separated, and Mother initiated a dissolution-of-marriage action. During the pendency of the dissolution-of-marriage action, Truong took a paternity test and discovered that he is not Second Child's biological father. Following this discovery, Truong filed a civil action against Mother for one count of misconduct, negligence, and intentional misrepresentation of paternity, and one count of fraud. Specifically, Truong claimed that Mother owed a duty of care to Truong to disclose he was not the father of Second Child. Truong alleged that Mother's negligent failure to disclose Truong's non-paternity caused Truong to incur emotional damages as he "cared for, raised and contributed to the support and well[-]being of the child for over ten years." Truong's petition also maintained Mother fraudulently represented to Truong that he was the father of Second Child, that Mother knew Truong was not the child's father, that Truong relied on Mother's misrepresentation as he cared for, raised, and contributed to the well-being and support of the child, and he was thereby emotionally damaged.
Mother moved to dismiss Truong's petition for failing to state a cognizable cause of action. Among her arguments for dismissal, Mother contended Truong failed to *764 specify actual, recognizable damages in his petition. The circuit court agreed with Mother and dismissed Truong's petition. Truong appealed. This court initially dismissed Truong's appeal, finding the circuit court's judgment was not in the form of an "order" and was not final for the purpose of an appeal. The circuit court then denominated the judgment as final. Truong now appeals from the final judgment.
Point on Appeal
In his sole point on appeal, Truong argues that the circuit court erred in dismissing his petition because he pleaded with particularity the elements of misrepresentation, negligent misrepresentation, and fraud.
Standard of Review
We review motions to dismiss de novo. Smith v. Humane Soc'y of the United States, 519 S.W.3d 789, 797 (Mo. banc 2017). "A motion to dismiss for failure to state a claim is solely a test of the adequacy of a plaintiff's petition." Id. (internal quotations omitted). "[T]he facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiff[ ]." Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008) ; see also Byrne & Jones Enters., Inc. v. Monroe City R-l Sch. Dist., 493 S.W.3d 847, 851 (Mo. banc 2016). We do not weigh the credibility and persuasiveness of the facts alleged. Bromwell v. Nixon, 361 S.W.3d 393, 398 (Mo. banc 2012). Rather, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Smith, 519 S.W.3d at 798 (internal quotations omitted). We reverse the petition's dismissal only "[i]f the petition sets forth any set of facts that, if proven, would entitle the plaintiff[ ] to relief[.]" Lynch, 260 S.W.3d at 836.
Discussion
The issue presented by this appeal is whether a person may petition the court for emotional damages stemming from the misrepresentation of a child's parentage under a claim of fraud, misrepresentation, or negligent misrepresentation when the complaining party does not seek to adjudicate parentage in the petition. Truong maintains that he adequately and properly pleaded the required elements for common-law fraud and misrepresentation; thus, the circuit court erred in dismissing his petition. Mother counters that Truong's petition asserts a claim of paternity fraud, which is not recognized as a common law cause of action in Missouri, is contrary to public policy, and falls outside of the remedies provided by the Missouri Uniform Parentage Act (the "UPA").[2]
This appeal appears to be a case of first impression because Truong's petition asserts a common law claim of fraud intertwined with issues of paternity. Claims relating to paternity generally arise under the UPA and similar statutes which directly address issues of paternity. See Sections 210.817-854; Rule 74.06(b).[3] Because *765 Truong does not seek any determination of paternity or any change in his parental status of Father to Second Child in his petition, Truong maintains that he does not assert a claim of paternity fraud, but alleges simple common-law fraud causing him emotional damage. Truong emphasizes in his briefing before this Court that he does not seek to adjudicate his paternity and does not seek reimbursement of past financial contributions made in support of Second Child.
We have found no Missouri case addressing common-law fraud allegations involving facts similar to those alleged by Truong. Moreover, Missouri courts have not awarded damages based solely on allegations of emotional distress under the facts described in Truong's petition. We therefore analyze Truong's petition through a process of considering what causes of action may be applicable to the facts pled in his petition. See Smith, 519 S.W.3d at 798 (we review the petition academically "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.").
I. Rule 74.06(b)-Relief from Final Judgment
Our Supreme Court Rules provide one avenue of relief to an aggrieved person seeking to challenge a paternity judgment. Specifically, Rule 74.06(b) "provides relief from a judgment by allowing a party at any time to bring an independent action in equity to set aside a judgment that was obtained by extrinsic fraud against the court." T.B. v. N.B., 478 S.W.3d 504, 508 (Mo. App. E.D. 2015). We note that Truong, in his petition, does not seek a judgment determining his non-paternity of Second Child. Nor does his petition seek to set aside a prior judgment of paternity. Thus, a plain reading of Truong's petition does not assert a claim for relief under Rule 74.06(b).
II. The Missouri Uniform Parentage Act (The "UPA")
We next consider Truong's allegations and prayer for relief under the UPA. Sections 210.817-854. The Missouri legislature enacted the UPA to provide "a uniform method for determining paternity which would protect the rights of all parties involved, especially the children." State ex rel. Wade v. Frawley, 966 S.W.2d 405, 407 (Mo. App. E.D. 1998). Missouri recognizes the UPA as an authoritative, yet not exclusive, statute for proving and litigating parentage. Fry v. Fry, 108 S.W.3d 132, 136 (Mo. App. S.D. 2003). With the UPA's underlying purpose in mind, the Southern District previously noted that "courts do well to mandate that the procedural requirements of the UPA be applied in cases where parentage is contested and where no provision for adjudicating that issue outside the UPA appears applicable." Id. Relying on this logic, Mother posits that the UPA governs issues of paternity and Truong has no remedies available to him outside the UPA.
A parent and child relationship exists between Truong and Second Child regardless of his past or current marital status to Mother as Section 210.818 provides that "[t]he parent and child relationship extends equally to every child and every parent, regardless of the marital status of the parents." The UPA acknowledges a presumption of paternity in various circumstances described by Section 210.822. Section 210.822 states that:
*766 1. A man shall be presumed to be the natural father of a child if:
(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage ...; or
(2) Before the child's birth, he and the child's natural mother have attempted to marry each other ...; or
(3) After the child's birth, he and the child's natural mother have married or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the marriage is or may be declared invalid, and:
(a) He has acknowledged his paternity of the child in writing filed with the bureau; or
(b) With his consent, he is named as the child's father on the child's birth certificate; ... or
(4) An expert concludes that the blood tests show that the alleged parent is not excluded and that the probability of paternity is ninety-eight percent or higher, using a prior probability of 0.5.
2. A presumption pursuant to this section may be rebutted in an appropriate action only by clear and convincing evidence.... If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing the paternity of the child by another man.
Truong is prescribed to be Second Child's Father under Section 210.822 because Truong and Mother married after the Second Child was born and, with Truong's consent, Truong was named Second Child's father on Second Child's birth certificate. Section 210.822.1(3). Although the blood test Truong conducted may defeat this presumption, Truong has expressly declined to contest his parentage of Second Child in his petition. Sections 210.822.1-.2.
A party's right to challenge a judgment of paternity is set forth in Section 210.854, which "creates a right to set aside an otherwise final, non-appealable judgment determining paternity and to unwind the financial and criminal ramifications of non-support resulting from the judgment." State ex rel. Mo. v. Campbell, 386 S.W.3d 229, 230 (Mo. App. W.D. 2012). The petition must be filed within two years of the judgment, and must be served upon the biological mother. Section 210.854.1: see also T.B., 478 S.W.3d at 507 (applying Section 210.854's two-year statute of limitations to dismiss an untimely petition).
"Pursuant to the plain language of Section 210.854, it does not provide an avenue of relief to a petitioner who is not questioning their own parental relationship with the child." Gwyn v. Summers, 514 S.W.3d 628, 632 (Mo. App. W.D. 2017) (emphasis in original) (citing Soward v. Mahan, 926 S.W.2d 138, 142 (Mo. App, E.D. 1996) ("The primary rule of statutory construction requires courts to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute.") ). The Missouri legislature's "clear intent was to provide an avenue to set aside a paternity judgment against a person who is not a parent of the child and to free that person from the consequences of such a judgment, e.g., child support and potential imprisonment for failure to pay," Id. (citing Campbell, 386 S.W.3d at 230 ). "Thus, in order to invoke the statute, the petitioner must be challenging the parental relationship between petitioner and child." Id. (emphasis *767 in original) (finding that the mother was unable to proceed under Section 210.854 since she was not contesting the fact that she was a biological parent of the child and rather was contesting the father's parentage); Cooper v. Cooper, 445 S.W.3d 589, 593 (Mo. App. S.D. 2014) (finding the same).
Here, Truong has explicitly stated that his petition does not seek to adjudicate the parent child relationship between himself and Second Child. Specifically, Truong states in his reply brief that "[t]he action for damages for fraud filed against [Mother] by [Truong] does not seek reimbursement or to set aside for child support, and, in fact, there has been no child support judgment ever entered, and, therefore, [Truong] does not seek to recover anything related to child support." Because Truong is not seeking to free himself from the consequences of a paternity judgment, e.g., paying child support or potential imprisonment for failure to pay, Truong's petition does not comply with Section 210.854's procedural requirements. Gwyn, 514 S.W.3d at 632.
Truong acknowledges that his petition does not assert a claim under the UPA. We agree because Truong does not seek to set aside paternity of Second Child in his petition, nor does he comply with the UPA's procedural requirements. See id.
III. Paternity Fraud
Acknowledging that his petition fails to state a claim under the rules or statutes historically used to litigate claims relating to paternity, Truong characterizes his petition as a simple garden-variety case of common-law fraud. Although styled as a petition for fraud and misrepresentation, we are averse to characterize Truong's allegations as anything but a claim of paternity fraud. See M.M.H. v. J.P.C., 42 S.W.3d 16, 19 (Mo. App. E.D. 2001) (finding that although the petitioners styled their petition as a fraudulent misrepresentation claim, the Court treated the claim as it was: negligent or wrongful rendering of genetic counseling health care services; petitioners are not authorized to pick a theory of recovery in order to choose a more advantageous statute of limitations). In styling his petition as fraud and misrepresentation, Truong overlooks the integral role of paternity in his claims, and disregards the individualized treatment that issues of paternity are accorded under the law. Allegations of fraud interwoven with issues of paternity present societal concerns far more complex and impactful than allegations of misrepresentation or fraud made in connection with the purchase of a product or service. We would be strained to characterize allegations of fraud involving issues of paternity as "garden variety" fraud claims. Indeed, no Missouri court has yet recognized a common-law claim of fraud in connection with paternity issues, perhaps because the legislature has provided an express and limited statutory process for addressing this type of claim though the UPA.
In those states which recognize paternity fraud as a common-law cause of action, paternity fraud occurs "when a mother makes a representation to a man that the child is genetically his own even though she is aware that he is not, or may not be, the father of the child." Dier v. Peters, 815 N.W.2d 1, 4 (Iowa 2012). Here, Truong factually avers that Mother misrepresented to him that Second Child was genetically his even though Mother was aware that Truong is not Second Child's biological father. Although Truong characterizes his petition as simply common-law fraud, we see no distinction between his allegations and a claim of paternity fraud.
While Missouri has yet to adopt common-law "paternity fraud" as a cause of *768 action, we acknowledge that states in our union have varied their approach to this issue. Compare id. at 12 (recognizing paternity fraud as a permissible tort claim); Miller v. Miller, 956 P.2d 887, 904 (Okla. 1998) (allowing a claim for restitution of child support based on fraud); Koelle v. Zwiren, 284 Ill.App.3d 778, 220 Ill.Dec. 51, 672 N.E.2d 868, 875 (1996). with Nagy v. Nagy, 210 Cal.App.3d 1262, 258 Cal.Rptr. 787, 791, 792 (1989) (finding no cause of action for fraud or intentional infliction of emotional distress resulting from a claim of a nonbiological parent seeking damages for "developing a close relationship with a child misrepresented to be his"); Day v. Heller, 264 Neb. 934, 653 N.W.2d 475, 479 (2002) ("We do not believe that having a close and loving relationship 'imposed' on one because of a misrepresentation of biological father is the type of 'harm' that the law should attempt to remedy."); Parker v. Parker, 950 So.2d 388, 393 (Fla. 2007) (refusing to recognize fraud resulting from the former wife's misrepresentation concerning paternity as a permissible cause of action due to policy concerns); Doe v. Doe, 358 Md. 113, 747 A.2d 617, 618, 625 (2000) (finding that a tort by a husband against his wife "for fraud and intentional infliction of emotional distress when the actions are based upon the wife's alleged adultery and subsequent misrepresentation of the paternity of children" is barred by public policy).
We critically note that Missouri law and public policy consistently prioritize the needs and interests of children in divorce proceedings and other legal proceedings involving children. See, e.g., Section 452, 375.2 ("The court shall determine custody in accordance with the best interest of the child"); S.M. v. E.M.B.R., 414 S.W.3d 622, 658 (Mo. App. S.D. 2013) (citing Section 211.447.7 as setting forth factors to evaluate and "consider in deciding whether termination of the parent-child relationship is in a child's best interest."); Wade, 966 S.W.2d at 407 (recognizing that the UPA was established primarily to protect the rights of all parties involved, "especially children[.]").
Given the paramount importance Missouri statutes accord the interest of the child in divorce proceedings and other cases, public policy dictates that we similarly prioritize the interests of the child in other proceedings where the issue of paternity is central to the claim being litigated. In so doing, we would take an approach consistent with those states rejecting a common law tort of paternity fraud as contrary to public policy. Specifically, we would recognize that Missouri's public policy prioritizing children's needs in cases of dissolution, custody, and termination of parental rights similarly should preclude a non-biological father from bringing a common law action for fraud against a mother who is alleged to have misrepresented the child's parentage after years of rearing the child as his own. See Nagy, 258 Cal.Rptr. at 791. We would join our voice to that of other courts in affirming that not all morally wrongful and potentially hurtful conduct have a remedy in common law. Some "wrongs such as betrayal, brutal words, and heartless disregard of feelings of others are beyond any effective legal remedy," and thus to recognize a tort such as paternity fraud "has the effect of saying 'I wish you had never been born' to a child who, before the revelation of biological fatherhood, was under the impression that he or she had a father who loved him or her[.]" Day, 653 N.W.2d at 479 ; see also Godin v. Godin, 168 Vt. 514, 725 A.2d 904, 910 (1998) ("Whatever the interests of the presumed father in ascertaining the genetic 'truth' of a child's origins, they remain subsidiary to the interests of the state, the family, and the child in maintaining the continuity, financial support, and psychological *769 security of an established parent-child relationship.").
Moreover, because the Missouri legislature already has provided a process to address issues of paternity though the UPA, the concerns of those who advocate for the rights of a "wronged" father have been addressed. However, because Truong's petition is deficient on other similar but distinct grounds, we need not resolve this appeal by expressly declining to recognize a common law cause of action for paternity fraud. We leave that decision for another day and another court.
IV. Unrecognizable Damages Claim
Fatal to Truong's petition is his failure to allege damages that may be recovered from Mother. Truong offers no case law, and nor have we found any authority allowing a party to recover common law damages for emotional distress as a direct result of caring for and rearing a child with whom that party lacks a biological connection.
A fundamental tenet of Missouri common law is that a party may not recover speculative damages. Girdley v. Coats, 825 S.W.2d 295, 298 (Mo. banc 1992) ; Wise v. Sands, 739 S.W.2d 731, 734 (Mo. App. S.D. 1987). Missouri treats the cost of child-rearing as a speculative damage. Girdley, 825 S.W.2d at 298. Specifically:
Speculative results are not a proper element of damages. The costs of child rearing-and especially education-are necessarily speculative. Who can divine, soon after birth, whether the child will be a financial boon or burden to the parents, what level of education will be required or what unique expenses can arise? These determinations are beyond the scope of probative proof. Likewise, an attempt to quantify the expense of raising a child and offsetting that expense by the "benefits" conferred on the family is neither workable nor desirable.
Perhaps the costs of rearing and educating the child could be determined through use of actuarial tables or similar economic information. But whether these costs are outweighed by the emotional benefits which will be conferred by that child cannot be calculated.
Id. (internal citations omitted). Although Girdley discusses determining damages for future child-rearing, the same analysis applies when comparing the cost of past child-rearing to the vast benefits a parent has received, and will continue to receive from a parent-child relationship. An amount of damages, if any, is simply unverifiable. Id. Further, Missouri does not recognize damages dependent upon merely unverifiable testimony. See Wilson v. Kuenzi, 751 S.W.2d 741, 746 (Mo. banc 1988) (refusing to recognize wrongful birth or wrongful life as tort actions in Missouri because these actions rely almost exclusively on the women's testimony, "long after the fact and when it is in her financial interest to do so, that she would have chosen to abort if the physician had but told her of the amniocentesis test."). Similarly, here, Truong asks us now to speculate whether he would have chosen to disown Second Child while raising Second Child's siblings in the same home as his own if Mother had told him of Second Child's true parentage. This we cannot and will not do.
Also important to our analysis is the fact that in neither count of his petition does Truong state specifically the nature or the cause of his emotional damages. See Rule 55.15 (plaintiffs must plead fraud with particularity). With regard to damages, Truong merely states that because of Mother's fraud and misrepresentation, and because Truong "relied on that representation and cared for, raised and contributed to the support and well[-]being of the child for over ten years, [Truong] has endured emotional distress." To adequately plead the damage element of fraud, the petition *770 need only assert a "proximate causal connection between the misrepresentations alleged and the claimed injury, i.e. the damages." Schauer v. Gundaker Movits Real Estate Co., 813 S.W.2d 112, 115 (Mo. App. E.D. 1991). Truong's petition seeks damages because he "cared for, raised and contributed to the support and well[-]being" of Second Child even though Second Child was not Truong's biological child. But Truong seeks no reimbursement for his financial support of Second Child. And as previously noted, the UPA provides a method and process for addressing such claims, which Truong has not pursued. As we consider the sole basis for Truong's claim of emotional distress, we know of no Missouri jurisprudence allowing the recovery of monetary damages as a consequence of loving and caring for a child later determined not to be their biological child.
Truong poignantly emphasizes in his reply brief that his petition does not seek damages based on a reimbursement of past child support; nor does he seek to adjudicate the issue of paternity in his petition. Truong passionately maintains that his petition seeks recovery of purely emotional damages. Given the unique posturing of Truong's averment, we are not persuaded that Truong has pleaded any recognizable emotional damages. Truong's alleged emotional distress flows solely from his role in caring for, raising and contributing to the support and well-being of Second Child for over ten years. Truong seeks damages for having acted as a father to Second Child, a role Truong does not challenge or seek to change in his petition. We are aware of no Missouri cases sanctioning the recovery of non-tangible emotional damages because a plaintiff developed an intimate parent relationship with a child only to later discover that the child is not his biologically.
Our position is buttressed by the jurisprudence of other states which disallow the recovery of damages based on developing an intimate relationship with a child. In Godin, the Supreme Court of Vermont examined "whether, six years after a final divorce decree and adjudication of paternity, a father may disavow a child born during the marriage and presumed for fourteen years to have been his," Godin, 725 A.2d at 905. The Supreme Court of Vermont determined that:
Whatever the interests of the presumed father in ascertaining the genetic "truth" of a child's origins, they remain subsidiary to the interests of the state, the family, and the child in maintaining the continuity, financial support, and psychological security of an established parent-child relationship. Therefore, absent a clear and convincing showing that it would serve the best interests of the child, a prior adjudication of paternity is conclusive.
Id. at 910. Thus, "[w]here the presumptive father has held himself out as the child's parent, and engaged in an ongoing parent-child relationship for a period of years, he may not disavow that relationship and destroy a child's long-held assumptions, solely for his own self-interest." Id. Further, the court affirmed the circuit court's denial for genetic testing and relief from the paternity-judgment determination. Id. at 912.
Similarly, in Ettore I. v. Angela D., the Supreme Court of New York, Appellate Division analyzed a paternity proceeding "to determine whether the doctrine of equitable estoppel may properly be invoked to prevent the petitioner from securing an order of filiation which would effectively divest a child of her status as the legitimate daughter of the appellants[.]" 127 A.D.2d 6, 513 N.Y.S.2d 733, 734 (N.Y. App. Div. 1987). The Supreme Court of New York, Appellate Division determined that the biological-father's "self-serving" effort to disavow paternity was inconsistent with the policy of protecting innocent children from an irreparable loss of financial security *771 and paternal bonds. Id. at 740. Thus, the court dismissed the proceeding and reversed the order of filiation. Id. While not binding on Missouri courts, we find these cases instructive.
Truong seeks damages based upon his current personal feelings after having developed a close relationship with Second Child and performing parental acts over Second Child's lifetime. We are sympathetic to the position Truong now finds himself. Truong's petition seeks to hold Mother accountable for her conduct towards Truong. Truong may be justified in his personal feelings toward Mother. But our duty under the law requires that Truong's personal feelings regarding Mother's actions be subservient to the interest of Second Child, who has reciprocated the love and caring to his only known Father for his entire life. We agree with our colleagues in other jurisdictions that "having a close and loving relationship 'imposed' on one because of a misrepresentation of biological father" is not the type of "harm" the law should attempt to remedy. Day, 653 N.W.2d at 479.
Truong has failed to properly plead recoverable damages in his petition. Even if Missouri recognized paternity fraud as a tort, Truong nevertheless seeks to recover a form of emotional damages heretofore not recognized in Missouri. The circuit court properly dismissed Truong's petition for failure to state a claim upon which relief can be granted.
Conclusion
The judgment of the circuit court is affirmed.
Gary M. Gaertner, Jr., J., and Colleen Dolan, J., concur.

For consistency, we refer to the three children by the order of their birth, with "First Child" and "Second Child" referring to the children Mother birthed prior to marrying Truong, and "Third Child" referring to the child conceived during the marriage.

The Missouri Uniform Parentage Act is located at Sections 210.817-.854 RSMo (2016). All Section references are to RSMo (2016) unless otherwise noted.

All Rule references are to Mo. R. Civ. P. (2016). Rule 74.06(b) states that:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.