John Elwin PIEL, III, Appellant,

v.

Julia Mae PIEL, Respondent.

No. 68254.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 26, 1996.

Alan W. Cohen, St. Louis, for appellant.

Sarah S. Pleban, St. Louis, Guardian Ad Litem.

Philip T. Ayers, Hazelwood, for respondent.

RHODES RUSSELL, Judge.

John Elwin Piel, III, ("Husband") appeals an order dissolving his marriage to Julia Mae Piel ("Wife") in which the trial court found that he was not the biological father of

J.W.P. and ordered that he have no custody rights nor child support obligations. We reverse in part and remand.

Husband and Wife married on April 17, 1989, and separated on April 26, 1992. On June 6, 1990, Wife gave birth to J.W.P. After the petition for dissolution of marriage was filed on August 12, 1992, Wife gave birth to another child, J.R.P. on June 16, 1994.

In Wife's petition she requested that she be granted custody of J.W.P. and be awarded maintenance and child support. She stated that there was one child "born during the marriage." [1] At the same time Wife also requested that a temporary restraining order be issued to prevent Husband from taking J.W.P. out of the state, which was granted by the court. In addition, Wife filed a motion for temporary maintenance and temporary child support.

Shortly thereafter, on November 12, 1992, Wife filed a motion for blood testing, stating therein that she did not believe Husband was the father of J.W.P. Blood tests were conducted on Husband, Wife and the child without objection. On February 12, 1993, Cynthia K. White, Ph.D., Associate Director of Roche Biomedical Laboratories, prepared a report excluding Husband as the biological father of J.W.P. All parties were notified of these results. The guardian ad litem ("GAL") was appointed to represent J.W.P. after allegations of abuse were made. The trial court directed the GAL to file a Petition for Determination of Paternity and Order of Child Custody and Child Support, pursuant to the Uniform Parentage Act ("UPA"), §§ 210.817–210.852 RSMo 1994. That petition named Bill Mays, a resident of Indiana, as the father of J.W.P. The summons was never served upon the putative father and no further action was taken on that petition.

A hearing on Wife's pendente lite motion was held on October 20, 1994. At that hearing Wife testified that Husband was not the father of J.W.P. She asserted that she had

been separated from Husband at the time of J.W.P.'s conception and that Husband was aware that he was not the biological father when they reconciled. Wife also testified that Husband had physically abused her throughout the marriage and alleged that Husband had touched J.W.P. in inappropriate ways. A PDL order was issued on October 27, 1994, in which the trial court ordered Husband to pay a sum of $2,500 for maintenance and attorney's fees. Husband was not ordered to pay any temporary child support.[2]

The case was tried on February 6, 1995. Wife again testified that Husband was not the father of J.W.P. The blood test results excluding Husband as J.W.P.'s father were admitted without objection.[3] Both Husband and Wife agreed that Husband was not the natural father of J.R.P. The trial court thereafter entered a Decree of Dissolution which included a finding that Husband was not the father of either J.W.P. or J.R.P. The court held that it was not in the best interest of J.W.P. to have any further contact with Husband and ordered that he have no right of temporary custody or visitation. No child support was ordered. Husband's motion for a new trial was denied and this appeal follows.

In the first point on appeal Husband argues that the trial court lacked authority to enter an order finding that Husband was not the biological father of J.W.P. Husband did not appeal the finding of non-paternity with regard to J.R.P. even though the child was born during the parties' marriage and he was, therefore, the presumed father of her as well. Wife also concedes that the trial court lacked jurisdiction to make a finding on the paternity issue, however she states that the case should be remanded for consideration under the UPA provisions. The GAL for J.W.P. and J.R.P. maintains that the trial court in a dissolution action does have the authority to make a finding that the pre-

---

1. The petition was never amended to include the second child, although a guardian ad litem was appointed to represent both children's interests.

2. An earlier PDL order had been granted which had ordered Husband to pay temporary monthly child support and maintenance. That earlier

PDL also awarded Wife temporary custody of J.W.P.

3. Husband's trial counsel did state that they were not conceding that the results of the blood test were correct.

sumed father is not the natural father and urges this court to affirm the decision. The GAL points out that the cases interpreting the UPA have dealt with actions to establish paternity, not non-paternity as in this case.

 Husband relies on a number of appellate court decisions in this state which have found that the UPA is the exclusive method for determining paternity. *P.L.K. v. D.R.K.,* 852 S.W.2d 366, 368 (Mo.App.1993); *Poole Truck Lines, Inc. v. Coates,* 833 S.W.2d 876, 878 (Mo.App.1992); *Snead by Snead v. Cordes by Golding,* 811 S.W.2d 391, 395 (Mo. App.1991). While none of those cases involved a court in a dissolution action finding that the presumed father was not the biological father, we agree with Husband and Wife that when paternity is contested in a dissolution action, the UPA should be followed to resolve the issue.[4]

 The UPA was adopted by Missouri in 1987. The purpose of the UPA was to establish a uniform method for determining paternity which would protect the rights of all parties involved, especially the children. *State ex rel. Ford v. Wenskay,* 824 S.W.2d 99, 100 (Mo.App.1992); *Snead,* 811 S.W.2d at 395. The UPA's procedures were not followed herein in that neither child was made a party to the action. For that reason, this case must be remanded for a determination of paternity in accordance with the requirements set forth under §§ 210.817–210.852 RSMo.1994. The parties, as originally directed to by the trial court, should file a petition pursuant to the UPA so as to authorize the trial court to make a determination of the paternity of both children.

In the second point on appeal Husband argues that the trial court was required to enter a finding that he was the biological father of J.W.P., based on alleged judicial admissions made by Wife in her pleadings. Husband bases this argument on the fact that Wife said in her petition for dissolution that there was one child "born during the marriage" and that Husband agreed to that in his answer. Furthermore, Husband

points out that Wife asked for child support in both the dissolution petition and her PDL motions, further suggesting that Husband was the biological father of J.W.P. Since the dissolution petition was never amended, Husband contends that the issue of paternity was resolved and that the trial court erred in hearing evidence on the paternity issue and in entering an order finding that he was not the biological father of J.W.P. Husband argues that we should therefore reverse the trial court and enter an order finding that Husband is the natural father of J.W.P. We disagree.

 It is true that allegations in a petition, admitted in an answer, are judicial admissions and obviate the need for any evidence on that issue. *Bachman v. City of St. Louis,* 868 S.W.2d 199, 201 (Mo.App.1994). In this case, however, we find the allegations do not amount to judicial admissions as to the paternity of J.W.P. Wife's initial petition stated only that one child was born "during the marriage." Wife claims that this was an intentional departure from the language of § 452.375.3 RSMo 1994, which requires a party to list all living children "of the marriage." Wife's subsequent pleadings and testimony clearly denied Husband's paternity of J.W.P. and served to put Husband on notice that paternity was a contested issue. Less than four months after the filing of Wife's initial petition, the trial court granted Wife's request for blood tests to determine the paternity of J.W.P. The results, establishing that Husband could not be the biological father, were sent to all concerned parties. Wife also testified at the PDL hearing that Husband was not the father of J.W.P. As a result of that testimony, the court issued an order which did not require Husband to pay any child support. Given this, it is disingenuous for Husband to argue that he had no notice that paternity was going to be an issue at trial.

 Husband did not argue at trial that there had been a judicial admission, nor did he object to the introduction of evidence on the issue of paternity. An issue that is not

4. We point out that in a recent Missouri Supreme Court decision, *In re Nocita,* 914 S.W.2d 358 (Mo. banc. 1996) the court held that paternity could be determined in a probate proceeding where the statute of limitations for the UPA had expired. That decision does not impact the present case.

advanced in the trial court is not preserved for appellate review. *Scism v. Scism*, 844 S.W.2d 506, 507 (Mo.App.1992). Wife testified at trial, without objection, that Husband was not the natural father of J.W.P. and that she had not had sexual relations with Husband during the time period of J.W.P.'s probable conception. In addition, a blood test establishing that Husband was not the biological father was admitted into evidence without objection.[5] Husband's own testimony at trial indicates that he felt paternity remained an issue. Husband testified that he was the father of J.W.P. and that he had regular sexual relations with Wife up until the time of separation. When a party does not rely on the judicial admissions of an adversary and introduces evidence which has the effect of proving the admission, the party making the admission is not bound. *Vaughn v. Michelin Tire Corp.*, 756 S.W.2d 548, 557 (Mo.App.1988). Point denied.

That part of the judgment relating to the paternity of J.W.P. and J.R.P. is reversed and the cause remanded for a determination of paternity in accordance with the provisions of the UPA. In all other respects the judgment is affirmed.

SMITH, P.J., and GARY M. GAERTNER, J., concur.

---

5. Husband's trial counsel did state that they were not conceding that the results of the blood test were correct.