**In re the Marriage of Donna Marie FRY and Justin Wade Fry.**

**Donna Marie Fry, Petitioner–Respondent,**

**v.**

**Justin Wade Fry, Respondent–Appellant.**

**No. 25254.**

Missouri Court of Appeals, Southern District, Division One.

June 23, 2003.

---

Sarah Luce, of Joplin, for Appellant.

Wendy E. Garrison, of Springfield, Twibell, Johnson, Johnson, Scott & Garrison, for Respondent.

PHILLIP R. GARRISON, J.

Justin Wade Fry ("Husband") appeals from the trial court's judgment dissolving his marriage to Donna Marie Fry ("Wife") in which it was determined that he was the father of the one child born during the marriage ("H.M.F."). In two points relied on, Husband assigns error to the trial court in failing to follow the procedures outlined in the Uniform Parentage Act ("UPA")[1] in determining the paternity of H.M.F., and in failing to find that the presumption that Husband was the father of H.M.F. was rebutted by Husband and Wife's testimony concerning H.M.F.'s paternity.

Husband and Wife were married November 19, 1989, and H.M.F., the only child born during the marriage, was born January 12, 1994. In Wife's petition for dissolution of marriage, filed May 25, 2001,[2] she averred that H.M.F. was a child "born of the marriage," an allegation denied by Husband in his answer to the petition. On September 18, 2001, the trial court appointed a guardian ad litem for H.M.F.[3]

During trial, Wife testified that she believed Husband was the father of H.M.F. She admitted, however, that she had been sexually involved with another man in the time period during which H.M.F. was conceived and that she previously had told Husband, during an argument, that he was not H.M.F.'s father. She was unable, under cross-examination, to tell the court unequivocally that Husband was H.M.F.'s father. Husband testified he did not believe he was H.M.F.'s father, and that Wife had told him the father was a man he knew only as "Jamey."

Based upon Wife's testimony, Husband requested that the trial court order genetic testing to determine conclusively the paternity of H.M.F. Wife stipulated to said testing, and the trial court ordered that it be done, at Husband's expense. At a post-trial conference held February 19, 2002, the court noted that no genetic testing had been performed as previously ordered. Husband did not appear personally at that hearing, during which his attorney was allowed to withdraw. On March 7, 2002, the trial court entered its judgment dissolving the marriage of Husband and Wife, in which the trial court found "that [H.M.F. was] the child of [Husband] due to the statutory presumption having not [sic] been rebutted by genetic testing[.]"

Having retained new counsel, Husband filed a motion to set aside the judgment of dissolution on March 22, 2002. In a hearing on that motion, Husband testified that his former attorney had not advised him of

1. Sections 210.817–210.852. References to statutes are to RSMo (2000) unless otherwise indicated.

2. This was the second of two petitions for dissolution filed by Wife, the first having been filed February 29, 1996. Presumably, that petition was later dismissed.

3. The record does not reveal the motivation for the trial court's appointment of a guardian ad litem.

the February 19, 2002 court date, during which the trial court had noted the failure to obtain paternity testing, and that he had not pursued genetic testing on his own because he had assumed his former attorney would set up that testing.[4]

On August 1, 2002, the trial court made a docket entry granting Husband's motion to set aside the judgment of dissolution. Wife filed a motion to vacate that docket entry on the basis of lack of jurisdiction, arguing that the ninety-day period during which the court was able to set aside its judgment had passed prior to the docket entry.[5] On August 15, 2002, the trial court made a docket entry sustaining Wife's motion to vacate the court's prior docket entry. This appeal follows.

In his first point relied on, Husband alleges that the trial court erred "in determining the paternity of [H.M.F.] because any determination of paternity must comply with the [UPA's] procedures for determining paternity and those procedures were not adhered to by the trial court in that the rights of all parties were not protected by joining the child and the possible father as parties to the action, as required by the [UPA]."

█ This case was tried without a jury. In such cases, this court "will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Hin-*

*nah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002).

█ Husband correctly notes that the UPA, adopted in large part by Missouri in 1987,[6] has as a fundamental goal the establishment of "uniformity among paternity determinations across the state." *See Piel v. Piel,* 918 S.W.2d 373, 375 (Mo.App. E.D. 1996) ("The purpose of the UPA was to establish a uniform method for determining paternity which would protect the rights of all parties involved, especially the children"). In support of this goal, numerous cases, including several decided by this court, have held that the UPA is the exclusive method for determining paternity in Missouri. *See, e.g., In re J.L ex rel. G.L. v. C.D.,* 9 S.W.3d 733, 734 (Mo.App. S.D. 2000); *Anderson v. Div. Of Child Support Enforcement, Mo. Dept. of Soc. Serv.'s,* 995 S.W.2d 546, 548 (Mo.App. S.D.1999); *State ex rel. Wade v. Frawley,* 966 S.W.2d 405, 406 (Mo.App. E.D.1998); *Piel* at 375; *Roberts v. Roberts,* 920 S.W.2d 144, 146 (Mo. App. E.D.1996); *Poole Truck Lines, Inc. v. Coates,* 833 S.W.2d 876, 878 (Mo.App. E.D. 1992); *Snead v. Cordes,* 811 S.W.2d 391, 396 (Mo.App. W.D.1991). *But see Matter of Nocita,* 914 S.W.2d 358 (Mo. banc 1996).

Notwithstanding the volume of cases holding the UPA is the exclusive means of determining paternity, it is well to note that there are now at least two statutory provisions in Missouri specifically providing for adjudication of paternity—the Uniform Reciprocal Enforcement of Support Law ("URESA")[7] and the Uniform Inter-

---

4. Neither party raises the issue whether Father's failure to heed the trial court's order that a blood test be performed amounted to a waiver of the issue of paternity for purposes of appeal.

5. *See* Rule 78.06. References to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

6. The model Uniform Parentage Act upon which the legislature based its 1987 legislation was promulgated in 1973. The model act was revised in 2000.

7. Sections 454.010–454.360.

state Family Support Act ("UIFSA").[8] In a 1993 amendment of URESA, the legislature provided that "[i]n any proceeding under [this Act] in which paternity is at issue, the provisions of sections 210.822 and 210.834, RSMo, shall apply." Section 454.200(4). The two sections of the UPA referenced in Section 454.200(4) establish, respectively, the presumption of paternity that arises where a child is born during a marriage, and the procedures and requirements for performing a blood test to determine paternity. Specifically referring to the 1993 amendment, the eastern district of this court held in 1996 that "by adopting only a portion of the UPA procedures into URESA, it is now clear that the legislature no longer intends for the UPA to be the exclusive procedure for adjudication of paternity issues." *State ex rel. State of Ill. v. Schaumann,* 918 S.W.2d 393, 397 (Mo.App. E.D.1996). *See also State of Wash. ex rel. Lewis v. Collis,* 963 S.W.2d 700, 702–03 (Mo.App. W.D.1998); *State ex rel. State of Ill. v. Jones,* 920 S.W.2d 116, 118 (Mo.App. E.D.1996).

Section 454.983, a portion of UIFSA, states that

> (a) [a] tribunal of this state may serve as an initiating or responding tribunal in a proceeding brought under [this Act] or a law or procedure substantially similar to [this Act], or a law or procedure substantially similar to ... [URESA] to determine that the petitioner is a parent of a particular child or to determine that a respondent is a parent of that child.

In 1998, the legislature added Section 210.817, the UPA's definition section, to the list of UPA provisions applicable to URESA or UIFSA determinations of paternity and provided specifically that "no other provisions of [the UPA] shall apply" in such actions. Section 210.844.

8. Sections 454.850–454.997.

■ Given the foregoing, we are unable to conclude in general terms that the UPA is truly the exclusive method for determining paternity in Missouri. Clearly, Missouri's statutory scheme contemplates otherwise. Nevertheless, we remain persuaded that an underlying purpose of the UPA is indeed to provide "a uniform method for determining paternity which would protect the rights of all parties involved, especially the children." *Piel* at 375. Indeed, the UPA itself states that its provisions "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [the Act] among the states enacting it." Section 210.850. With this laudable legislative goal in mind, courts do well to mandate that the procedural requirements of the UPA be applied in cases where parentage is contested and where no provision for adjudicating that issue outside the UPA appears applicable. If it is an over-generalization to state that the UPA is the exclusive means to determine paternity in this state, it is not too much to say that the legislature intended that it be applied as uniformly and universally as is appropriate and that courts should, therefore, seek to effectuate that goal whenever possible.

■ This is a dissolution case. As such, it is governed by the provisions of Chapter 452, which do not provide an independent procedural framework for adjudicating parentage where the issue is contested. Given this absence of procedural guidelines and the UPA's aforementioned and self-declared reason for existence, we find that its provisions for determining paternity should apply in dissolution actions where paternity is contested. *See Piel* at 375 (holding that "when paternity

is contested in a dissolution action, the UPA should be followed to resolve the issue"). In such cases, it is not, as Wife argues, a litigant's "responsibility to file cross pleadings pursuant to the [UPA] to deny paternity" in order to bring the UPA's requirements to bear.[9] Husband's answer to Wife's petition denying her allegation of paternity of H.M.F. was sufficient to place paternity at issue and implicate the UPA's requirements.

Having determined the requirements of the UPA were applicable here, it is left to address Husband's allegation that those requirements were not met. We find they were not, in that no action was filed under the UPA "for the purpose of declaring the existence or nonexistence of the father and child relationship ...." Section 210.826. Where, as in the instant case, the presumption of paternity outlined in Section 210.822(1) is applicable,[10] the UPA states that the "child, his natural mother, a man presumed to be his father ..., a man alleging himself to be a father, any person having physical or legal custody of a child for a period of more than sixty days, or the division of child support enforcement may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship presumed under subsection 1 of [S]ection 210.822." Section 210.826.[11] Once such an action is filed, Section 210.829 allows it to be "joined by separate document with an action for dissolution of marriage." No such action was filed in this case, as was required by the UPA once the matter became a contested issue by way of Husband's answer.

Moreover, since no action was filed pursuant to Section 210.826, there obviously was no compliance with Section 210.830, which requires that the child whose paternity is at issue, the natural mother, the presumed father and any putative father be made parties to the Section 210.826 action. Since H.M.F. is a minor, the contesting of paternity should have been followed by the appointment of a next friend for H.M.F. in the subsequent UPA action. "The child's mother or father or the division of child support enforcement or any person having physical or legal custody of the child" may serve in such a role, or, if the trial court determines that the interests of the child and the child's next friend

---

9. As we discuss below, once the provisions of the UPA are implicated in a dissolution case, an action under the Act must be filed pursuant to Section 210.826. It is not a contradiction to say, as we do here, that such an action need not have been filed in order for paternity to be contested and the UPA's procedural requirements to be implicated.

10. Section 210.822(1) establishes a presumption that a man is the natural father of a child if the man and the child's mother "are or have been married to each other and the child is born during the marriage[.]" Section 210.822(2) allows for the rebuttal of that presumption by "clear and convincing" evidence, which may be accomplished by genetic testing.

11. In our view, the legislature's use of the word "may" in this section is best interpreted as having a limiting, rather than a permissive, effect. Stated differently, "may," as used in this section, establishes a limited and exclusive set of parties authorized to bring an action under the UPA, i.e., it is a "standing" provision. It is not meant to relegate such an action to status as an optional, rather than mandatory, step in adjudicating paternity. That this interpretation reflects the intent of the drafters of the model UPA is, in our view, revealed by their placement of the provisions reflected in Missouri's Section 210.826 in a new section of the model UPA, entitled "Standing to Maintain Proceeding," in their 2000 revision of the UPA. Formerly, this language was found in a section labeled by both the drafters and our legislature as "Determination of Father and Child Relationship; Who May Bring Action; When Action May Be Brought."

are in conflict, the trial court is required to appoint a guardian ad litem for the purpose of representing the child in the UPA proceeding. Section 210.830.

Summarizing, we find that the procedures for adjudicating paternity outlined in the UPA were applicable in this case, as it is a dissolution case where the issue of paternity was contested. Those procedures were not adhered to, as no action to determine paternity was filed pursuant to Section 210.826. Such an action should have been filed and Husband, H.M.F. by way of a next friend or guardian ad litem, and any putative father should have been made parties to that action. In failing to follow these procedures, the trial court misapplied the law. *Hinnah* at 620.[12]

The judgment of the trial court is reversed to the extent that it adjudicated the paternity of H.M.F. The judgment is otherwise affirmed. The case is remanded to the trial court for a determination of parentage pursuant to the provisions of Sections 210.826 and 210.830. The procedural requirements of the UPA are to be followed in adjudicating the issue of paternity including, but not limited to, those requirements discussed herein.

MONTGOMERY, P.J., and BARNEY, J.,—concur.

---

12. Since the issues raised in Husband's first point are dispositive, we do not review his second point.