

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| CUSTOM CONSTRUCTION SOLUTIONS, LLC, and CANNON DESIGN, INC., | ) ) ) ) | No. ED111253 |
| Plaintiffs/ Respondents, | ) ) | Appeal from the Circuit Court of the City of St. Louis |
| v. | ) | Cause No. 1822-CC11468 |
| B & P CONSTRUCTION, INC., et al. | ) ) | Honorable Christopher E. McGraugh |
| Defendants, | ) ) |  |
| and | ) ) |  |
| HH ST. LOUIS RAILWAY L.P., and GAMMA REAL ESTATE CAPITAL, LLC, | ) ) ) ) |  |
| Defendants/Appellants | ) ) |  |
| and | ) ) |  |
| GEOTECHNOLOGY, INC., TRUSTEES SERVICES, INC., and CONCRETE STRATEGIES, LLC, | ) ) ) ) |  |
| Defendants/ Respondents. | ) | Filed: November 28, 2023 |

### Introduction

Following a bench trial, the trial court found the mechanic's liens filed by Custom

Construction Solutions, LLC ("Custom Construction"); Cannon Design, Inc. ("Cannon"), and

Concrete Strategies, LLC ("Concrete Strategies") (collectively, "lien claimants") had priority over the deed of trust filed by Gamma Real Estate Capital, LLC ("Gamma") for a project involving the Railway Exchange Building and parking garage in downtown St. Louis. On appeal, Gamma raises four points. Gamma argues the trial court erred in finding the mechanic's liens had priority over the deed of trust, in finding Gamma waived the priority of its deed of trust, in finding the mechanic's liens were valid, and in admitting Cannon's letter of registration after the trial.

In a consolidated action, the trial court also found HH St. Louis Railway, LP ("HH St. Louis") breached its contracts with Custom Construction, Cannon, Concrete Strategies, and Geotechnology, Inc. ("Geotechnology") by failing to pay them. HH St. Louis raises six points on appeal. HH St. Louis argues the trial court erred in finding it breached the contracts, in finding Concrete Strategies was unjustly enriched, in finding the mechanics liens were valid, in admitting Geotechnology's and Cannon's letters of registration after the trial, and in awarding attorneys' fees.

We affirm in part and reverse in part the judgment of the trial court.

## Factual and Procedural Background

### Facts

In January 2017, HH St. Louis purchased the Railway Exchange Building, the parking garage, and the surface parking lot to redevelop them into retail, office, and residential space. The total purchase price was approximately $29.7 million. Gamma, HH St. Louis's financial lender, lent HH St. Louis $19.7 million. At the time of closing, HH St. Louis executed a deed of trust in favor of Gamma as a security interest in the loan. Gamma recorded the deed of trust on February 14, 2017.

Gamma placed a portion of the loan proceeds into a predevelopment reserve fund. This fund contained $5 million. HH St. Louis used this fund to complete predevelopment work, which included remediation and demolition. To access the funds, HH St. Louis submitted draw requests to Gamma, which required HH St. Louis to provide all bills, invoices, and receipts. The draw requests referred to the loan agreement as a "construction loan agreement." As part of the draw requests, HH St. Louis "agree[d] to provide, if requested by [Gamma], a vendor payee listing showing the name and amount currently due each party to whom [HH St. Louis] is obligated for labor, material, and/or services supplies." Gamma approved some draw requests and rejected others.

HH St. Louis retained Concrete Strategies to provide all necessary materials, labor, and construction for mitigation repairs to strengthen the Railway Exchange Building and garage. Specifically, this required various repairs and installation of temporary shoring to keep the building in an operating manner. Concrete Strategies began work on the project, but to take advantage of tax incentives, it brought in B&P Construction, a minority-owned contractor. B&P Construction took over as the general contractor, and Concrete Strategies became a subcontractor. Concrete Strategies performed shoring work on the garage until May 8, 2018. After HH St. Louis and B&P Construction failed to pay invoices submitted by Concrete Strategies, Concrete Strategies filed a lien against the garage in the amount of $378,041.35.

In addition to Concrete Strategies's work on the garage, HH St. Louis, through its authorized representative, S.M.,[1] asked Concrete Strategies to provide labor and equipment for selective demolition on the Railway Exchange Building. Concrete Strategies performed the

---

[1] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

selective demolition at a rate of $1,900 per day and submitted the invoices to HH St. Louis. HH St. Louis failed to pay Concrete Strategies for its work on the Railway Exchange Building. Concrete Strategies therefore filed a lien against the Railway Exchange Building in the amount of $155,000.

In November 2017, HH St. Louis and Cannon entered into a contract for Cannon to provide architecture and engineering services for the redevelopment of the Railway Exchange Building. Under the contract, HH St. Louis was required to pay Cannon $3.65 million. Cannon began work on the project and completed the first two stages of the architectural and engineering process. This included producing multiple schematic designs for HH St. Louis. Cannon's work continued until June 28, 2018. Up to that point, some of Cannon's invoices went unpaid. After unsuccessfully attempting to resolve the nonpayment, Cannon filed a lien on the Railway Exchange Building on August 24, 2018, in the amount of $1,758,585.

Concrete Strategies hired Custom Construction on May 1, 2017 to provide materials to assist in supporting the garage while it was being repaired. After B&P Construction became the general contractor, Custom Construction began sending its invoices to B&P Construction. Some of the invoices were paid, but others were not. Due to the unpaid invoices, Custom Construction filed a lien against the Railway Exchange Building, garage, and surface parking lot in the amount of $47,186.22.

B&P Construction joined the Railway Exchange Building project in June 2017. Soon after, B&P Construction entered into a contract with HH St. Louis. B&P Construction began work on the Railway Exchange project in November 2017. Its main roles were cleaning up the garage and serving in an administrative role as the general contractor. In the administrative role, B&P Construction received and sent invoices from the subcontractors to HH St. Louis for payment. It

sent these invoices to S.M., an authorized representative of HH St. Louis. HH St. Louis would send the funds to B&P Construction, which in turn would disburse the funds to the subcontractors. Eventually, some of Concrete Strategies's invoices went unpaid because HH St. Louis failed to pay B&P Construction and B&P Construction failed to pay Concrete Strategies. Because HH St. Louis failed to pay B&P Construction for four pay applications from Concrete Strategies, B&P Construction filed a cross-claim against HH St. Louis to recover damages for the amounts of the pay applications.

In December 2017, HH St. Louis retained Geotechnology to perform engineering work on the Railway Exchange Building. Specifically, Geotechnology would perform materials testing to provide data and analysis for the existing structure of the Railway Exchange Building. Geotechnology performed its work and submitted invoices to HH St. Louis for $45,066.13. HH St. Louis failed to pay the invoices. Due to the nonpayment of its invoices, Geotechnology filed a breach of contract cross-claim against HH St. Louis and a lien against the Railway Exchange Building.

Procedural Background

In October 2018, Custom Construction filed suit against B&P Construction, HH St. Louis, and Gamma to enforce its lien against the Railway Exchange Building, garage, and surface parking lot. In February 2019, Cannon filed suit against HH St. Louis, Gamma, Custom Construction, B&P Construction, Geotechnology, and Concrete Strategies to enforce its lien, among other things. In response, Geotechnology filed a counterclaim and cross-claim seeking enforcement of its lien and additionally filed a cross-claim against HH St. Louis for breach of contract. Concrete Strategies filed a cross-claim against all parties seeking enforcement of its liens, and a cross-claim against

5

HH St. Louis for unjust enrichment. B&P Construction filed a cross-claim against HH St. Louis for breach of contract.

Gamma raised affirmative defenses alleging its deed of trust maintained priority over the mechanic's liens, and it had not waived the priority of its deed of trust. HH St. Louis raised affirmative defenses alleging the lien claimants failed to comply with the lien statute.

The trial court conducted a bench trial over four non-consecutive days. Following the close of all lien claimants' evidence, HH St. Louis moved for judgment against the lien claimants under Rule 73.01.[2] HH St. Louis argued neither Cannon nor Geotechnology proved they were registered with the Board for Architects, Professional Engineers, and Surveyors, or that they obtained a certificate of authority to practice in Missouri. In response, Cannon and Geotechnology moved to re-open evidence to offer further proof they were registered in Missouri and obtained certificates of authority. Over Gamma's opposition, the trial court re-opened evidence for the sole purpose of accepting Cannon's and Geotechnology's letters of registration.

The trial court entered judgment finding:

(1) Gamma waived priority of its deed of trust because it was aware its loan proceeds would be used for construction costs.

(2) Custom Construction had an enforceable lien on the Railway Exchange Building, garage, and surface parking lot in the amount of $47,186.22. Additionally, Custom Construction was entitled to $18,860.27 in prejudgment interest.

(3) Cannon had an enforceable lien on the Railway Exchange Building in the amount of $2,385,682. This amount included the principal amount plus interest.

---

[2] All rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

(4) Concrete Strategies had an enforceable lien on the garage for $524,203.53, and on the Railway Exchange Building for $214,927.67. These amounts included the principal amounts plus interest. Additionally, Concrete Strategies was entitled to $645,824.75 against HH St. Louis for unjust enrichment.

(5) Geotechnology was entitled to $60,789.65 against HH St. Louis for breach of contract. This amount included the principal amount plus interest.

(6) B&P Construction was entitled to $546,216.91 against HH St. Louis for breach of contract.

Cannon, Geotechnology, Concrete Strategies, and B&P Construction moved for an award of attorneys' fees. The trial court awarded Geotechnology attorneys' fees pursuant to the fee provision in its contract with HH St. Louis. The trial court awarded B&P Construction, Concrete Strategies, Geotechnology, and Cannon their attorneys' fees under Section 431.180, the Private Prompt Payment Act. ("PPA").

Gamma and HH St. Louis now appeal.

## Analysis

### *Gamma*

For the convenience of the reader, we will address Gamma's four points first and then turn to HH St. Louis's six points. In its first point, Gamma argues the trial court erred in granting priority to the lien claimants' mechanic's liens because Gamma recorded its deed of trust before the commencement of any work at the property. In its second point, Gamma argues the trial court erred in holding Gamma waived the priority of its purchase money deed of trust because the trial court applied the wrong waiver standard and none of the lien claimants submitted evidence to prove waiver. In its third point, Gamma argues the trial court erred in holding that the lien

7

claimants proved compliance with the statutory requirements for obtaining a valid mechanic's lien. In its fourth point, Gamma argues the trial court erred in admitting after trial Cannon's letter of registration without authenticating testimony and by refusing to allow Gamma to challenge the letter of registration.

Points One and Two

We address Points I and II together because Point II is dispositive of Point I.

In a bench-tried civil case, this Court will affirm the trial court's judgment unless there is no substantial evidence to support it, or it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "We view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Higgins v. Ferrari*, 474 S.W.3d 630, 635 (Mo. App. W.D. 2015) (quoting *Stander v. Szabados*, 407 S.W.3d 73, 78 (Mo. App. W.D. 2013)); *see also Central Parking Sys., LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 492 (Mo. App. E.D. 2017) ("We accept the evidence and reasonable inferences therefrom which support the trial court's decision as true, and we disregard all contrary evidence and inferences.").

A mortgagee holding a deed of trust can waive its priority interest to a mechanic's lien if the mortgagee induces "the furnishing of labor and material." *H.B. Deal Const. Co. v. Labor Disc. Ctr., Inc.*, 418 S.W.2d 940, 952 (Mo. Div. 1 1967) *overruled on other grounds by R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365 (Mo. banc 1974). "Generally, the priority of a superior deed of trust over an equitable lien can be waived where there is evidence that the holder of a superior deed of trust is aware that its loan will be used for construction on the property and will be secured by the property where the construction activity will be undertaken." *First Banc*

8

*Real Est., Inc. v. Johnson*, 321 S.W.3d 322, 335 (Mo. App. W.D. 2010); *see also Glenstone Block Co. v. Pebworth*, 330 S.W.3d 98, 102 (Mo. App. S.D. 2010) ("A lender who knows and contemplates that mechanic's liens and materialmen's liens can arise from a construction project for which the loan is being made waives the claim of priority of its deed of trust as to the mechanic's lien."); *Const. Equip. Mgmt., Inc., v. Dunhill Dev. Corp.*, 892 S.W.2d 639, 645 (Mo. App. E.D. 1994) (citing *Drilling Serv. Co. v. Baebler*, 484 S.W.2d 1, 10 (Mo. Div. 1 1972)).

Whether waiver occurred is a question of fact and "is not susceptible to solution by rigid legal dogma." *Kranz v. Centropolis Crusher, Inc.*, 630 S.W.2d 140, 147 (Mo. App. W.D. 1982). "Waiver is essentially a matter of intention, to be determined, usually, from the facts and circumstances." *Genesis Eng'g Co., Inc. v. Hueser*, 829 S.W.2d 579, 581 (Mo. App. W.D. 1992).

The trial court found that Gamma was "clearly aware that its loan would be used for construction on the property and that the loan would be secured by the property where the construction activity would be undertaken." This was evident from the loan agreement between Gamma and HH St. Louis and the fact that "Gamma controlled and approved the construction and architectural work and the disbursement of funds to pay for it."

Essentially, the trial court referred to the predevelopment reserve fund. HH St. Louis could access the fund pursuant to the terms of the loan agreement, but Gamma retained complete control over the fund. To access the fund, HH St. Louis provided detailed draw requests to Gamma, which referred to the loan agreement as a "construction loan agreement." Gamma approved some draw requests and exercised its discretion to reject others. Proof of this process amounts to substantial evidence that Gamma was aware its loan proceeds would be used for construction purposes.

Also, substantial evidence supported the finding that Gamma was aware the property was subject to liens. The parties' contract provided that HH St. Louis must pay "all claims and demands

of mechanics, materialmen, laborers and others." If there was a lien filed against the property, HH St. Louis would have to defend against the lien, indemnify Gamma, and hold Gamma harmless from all mechanic's liens.

Viewing the evidence in the light most favorable to the judgment and disregarding all contrary evidence, we conclude that substantial evidence supported the trial court's findings that Gamma was aware its loan proceeds would be used for construction and the property would be subject to liens, and Gamma waived the priority of its deed of trust for the Railway Exchange Building and garage. Because the trial court did not err in finding Gamma waived the priority of its deed of trust, we need not consider whether the deed of trust had priority over the mechanic's liens filed by Concrete Strategies, Custom Construction, and Cannon. Points I and II are denied.

## Point Three

In its third point, Gamma argues the trial court erred in finding the lien claimants proved compliance with the statutory requirements for obtaining a valid mechanic's lien.[3]

### *Liens Against the Parking Lot*

Gamma first argues the mechanic's liens of Custom Construction and Concrete Strategies against the surface lot are invalid because neither of them performed work or furnished materials for construction on the surface lot.

Section 429.010 governs mechanic's liens in Missouri.[4] It provides generally that any person who performs work upon land or furnishes material for any building or improvement upon

---

[3] Gamma's third point is exceedingly multifarious and fails to comply with Rule 84.04. *See Cedar Cnty. Comm'n v. Governor Michael Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023). Gamma raises at least seven different challenges under different legal theories to two liens filed by Concrete Strategies, one lien filed by Custom Construction, and one lien filed by Cannon. Though we may decline to review a multifarious point, we choose to review this point *ex gratia*. *Id.*

[4] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

land, or for repairing any building or improvement upon the land, under a contract with the owner or the owner's agent or contractor, shall have a lien on the building or improvement, and upon the land belonging to such owner on which the building or improvement is situated. Section 429.010.1. The lien attaches upon compliance with the provisions of Sections 429.010 to 429.340. *Id.*

Missouri courts have made clear: "Statutes creating mechanic's liens are remedial in nature and should be given a liberal construction so as to effectuate their object and purpose and protect the claims of the mechanics and materialmen." *Midwest Floor Co. v. Miceli Dev. Co.*, 304 S.W.3d 243, 247–48 (Mo. App. E.D. 2009); *see also State ex rel. Springfield Underground, Inc. v. Sweeney*, 102 S.W.3d 7, 9 (Mo. banc 2003) ("As a general rule, statutes relating to mechanic's liens should be liberally construed in favor of lien enforceability."). Reasonable and substantial compliance with the statute suffices. *Lake Ozark Const. Indus., Inc. v. Osage Land Co., L.L.C.,* 168 S.W.3d 471, 476 (Mo. App. W.D. 2005).

Custom Construction does not respond to Gamma's arguments on appeal. Custom Construction did not file a brief and instead incorporates by reference respondent Cannon's brief. But Cannon's brief does not offer any defense of Custom Construction's lien. "While precedent dictates that there is no penalty prescribed for a respondent's failure to file a brief, that failure deprives this Court of the benefits of the adversarial process." *State v. Stewart*, 640 S.W.3d 174, 178 n.3 (Mo. App. E.D. 2022); *see also Shomaker v. Director of Revenue*, 504 S.W.3d 84, 87 (Mo. App. E.D. 2016).

Custom Construction's lien described the Railway Exchange Building, the garage, and the parking lot next to the garage. At trial, the evidence showed Custom Construction worked on only the garage, not the Railway Exchange Building or the parking lot. Since Custom Construction did not perform work or furnish any materials for the parking lot, it is not entitled to a lien against the

parking lot. *See* Section 429.010. Accordingly, we must reverse the trial court's judgment insofar as it enforces Custom Construction's lien against the parking lot. Our decision in this regard does not disturb the trial court's judgment enforcing Custom Construction's lien against the garage.

Gamma's challenge to Concrete Strategies's lien on the parking lot is raised for the first time on appeal. Because Gamma failed to raise this specific challenge in the trial court, it is not preserved, and we need not consider it. *See Ford v. Skaggs Chiropractic, LLC*, 599 S.W.3d 264, 268–69 (Mo. App. S.D. 2020).

*Liens against the Garage*

Second, Gamma argues the mechanic's liens of Custom Construction and Concrete Strategies against the garage are invalid because they failed to comply with the statutory notice requirement under Section 429.100.

Section 429.100 provides that "every person except the original contractor, who may want to avail himself of the provisions of sections 429.010 to 429.340, shall give ten days' notice before filing of the lien . . . to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due."

Gamma reasons HH St. Louis does not own all of the parcels upon which the garage is located. For sufficient notice, Gamma argues Custom Construction and Concrete Strategies were required to serve notice to the owners of all four parcels on which the garage sits, in addition to serving HH St. Louis. Gamma concedes HH St. Louis was properly served with notice under the statute, but argues the purported remaining parcel owners, who are not parties to this appeal, were not served.

In its cross-claim petition, Concrete Strategies alleged HH St. Louis was the owner of both the Railway Exchange Building and the garage. In its answer to the cross-claim, Gamma admitted

12

HH St. Louis was the owner of the Railway Exchange Building and the garage, and did not allege the existence of any other owners. "Allegations in a petition, admitted in an answer, are judicial admissions and obviate any need for evidence on that issue." *J.H. Berra Paving Co., Inc. v. City of Eureka*, 50 S.W.3d 358, 362 (Mo. App. E.D. 2001) (quoting *Piel v. Piel*, 918 S.W.2d 373, 375 (Mo. App. E.D. 1996)). Once a party admits an allegation, it is bound by that admission. *J.H. Berra Paving Co.*, 50 S.W.3d at 362. Given this judicial admission, substantial evidence and the reasonable inferences drawn therefrom supported the trial court's finding that Custom Construction and Concrete Strategies gave sufficient notice to the owner of the garage pursuant to the terms of Sections 429.010 and 429.100.[5]

*Liens against the Railway Exchange Building*

Regarding the Railway Exchange Building, Gamma argues Custom Construction's lien is invalid because Custom Construction did not provide materials or work for that project. Gamma also argues Concrete Strategies's lien against the Railway Exchange Building is invalid because it failed to provide notice to the owner before filing the lien and the lien did not adequately describe the Railway Exchange Building. Finally, Gamma argues Cannon's lien against the Railway Exchange Building is invalid because Cannon failed to prove it was registered with, and had obtained a certificate of authority from, Missouri's Board for Architects, Professional Engineers, and Surveyors.

Custom Construction's lien described the Railway Exchange Building, the garage, and the parking lot next to the garage. But the evidence at trial showed Custom Construction performed work and provided materials for only the garage and not the Railway Exchange Building or the

---

[5] In any event, Section 429.010 allows for a mechanic's lien on only the land "belonging to" the owner with whom the lien claimant contracted. Gamma does not challenge the liens of Custom Construction and Concrete Strategies on that basis.

13

parking lot. Again, on the record before us, we must reverse the judgment enforcing Custom Construction's lien against the Railway Exchange Building for lack of substantial evidence. We leave undisturbed the trial court's judgment enforcing Custom Construction's lien against the garage.

Gamma also argues Concrete Strategies's lien against the Railway Exchange Building is invalid because Concrete Strategies failed to provide the requisite notice to the owner before filing its mechanic's lien. Gamma contends the lien notice on Concrete Strategies's first invoice to HH St. Louis was insufficient because it was addressed to Spinnaker St. Louis, LLC ("Spinnaker") rather than HH St. Louis itself, and Spinnaker was not given express authority to receive notice of the mechanic's lien. This argument is unpersuasive because the invoice was directed to HH St. Louis in care of Spinnaker St. Louis, LLC, and Spinnaker had authority to receive notice of the lien on behalf of HH St. Louis.

There are two types of agency authority: actual and apparent. *The Bar Plan v. Cooper*, 290 S.W.3d 788, 792 (Mo. App. E.D. 2009). "Actual authority consists of a principal telling his agent expressly what to do and of implied powers that go along with authority expressly granted." *Id.* "Apparent authority exists where a principal's manifestations to a third party have created a reasonable belief in the third party that an agent is acting for the principal, or where the principal is fully aware that another is acting as his agent but does nothing to correct the misconception." *Id.*

Concrete Strategies correctly responds that S.M. of Spinnaker was an agent of HH St. Louis. Testimony from Concrete Strategies's vice president established that he understood S.M. to be a representative of HH St. Louis, S.M. told him to bill HH St. Louis for the services provided, and S.M. even directly represented he was acting on behalf of HH St. Louis. Also, the principal of

14

HH St. Louis, A.G., was fully aware that S.M. was acting as an agent of HH St. Louis. A.G. was directly involved in email correspondence in which S.M. made decisions about the Railway Exchange project and did nothing to correct any misconception about the agency relationship. There is substantial evidence S.M. had apparent authority to act on behalf of HH St. Louis. Accordingly, Concrete Strategies's invoices sent to Spinnaker and S.M. provided the requisite notice to HH St. Louis.

Finally, Gamma argues Concrete Strategies's lien against the Railway Exchange Building is invalid because Concrete Strategies failed to describe the Railway Exchange Building in any of its mechanic's liens.

Section 429.080 states a lien must provide a true description of the property, "or so near to identify the same, upon which the lien is intended to apply." A lien description will satisfy this requirement "provided that the description was sufficient to enable one familiar with the locality to identify the premises covered by the lien." *Sweeney*, 102 S.W.3d at 9 (quoting *Breckenridge Material Co. v. Byrnesville Cons. Co., Inc.*, 842 S.W.2d 551, 552 (Mo. App. E.D. 1992)) (internal quotation marks omitted). A lien description is fatally defective "where the land described by the plaintiff was not the land on which the improvements were placed." *Id.* (quoting *Chance v. Franke*, 350 Mo. 162, 165 S.W.2d 678, 680 (Mo. Div. 1 1942)) (internal quotation marks omitted).

Trial testimony established the Railway Exchange Building is located at the street addresses of 611 to 615 Olive Street. Concrete Strategies's lien filed against the Railway Exchange Building listed the street address of 612 Olive Street. The invoices attached as exhibits to the lien filing described work completed on the Railway Exchange Building. Nevertheless, the legal description contained in the lien filing described the garage, not the Railway Exchange Building. Still, the listing of the street address of 612 Olive Street, which is contained within the range of

15

street addresses from 611 to 615 Olive Street, along with the invoices attached to the lien filing, are substantial evidence that one familiar with the locality would be able to identify the premises covered by the lien. *See Springfield Underground, Inc.*, 102 S.W.3d at 9.

In its final argument, Gamma argues Cannon's lien against the Railway Exchange Building is invalid because Cannon failed to prove it was registered with, and had received a certificate of authority from, the Board for Architects, Professional Engineers, and Surveyors. Gamma's argument is without merit. Cannon's vice president testified Cannon was registered to practice architecture in the State of Missouri. Under Section 429.015.1, an architecture or engineering corporation need only be registered with the state in order to validly attach a lien for architectural services. Because there is substantial evidence Cannon was registered with the State of Missouri, the trial court did not err in finding that Cannon's lien against the Railway Exchange Building is valid.

We grant Point III in part, and deny Point III in part.

Point Four

In its fourth point, Gamma argues the trial court erred in admitting Cannon's letter of registration after trial without authenticating testimony or allowing Gamma to challenge the letter of registration.

A trial court's evidentiary ruling is reviewed for abuse of discretion. *Johnson v. City of St. Louis*, 613 S.W.3d 435, 447 (Mo. App. E.D. 2020). A trial court abuses its discretion in *not* re-opening a case "when there is no inconvenience to the court or unfair advantage to one of the parties. . . [and a party seeks to] introduce material evidence. . . that would substantially affect the merits of the action." *Pride v. Lamberg*, 366 S.W.2d 441, 445 (Mo. Div. 2 1963). The trial court

16

has broad discretion in allowing a party to re-open its case. *Lavin v. Carroll*, 871 S.W.2d 465, 468 (Mo. App. E.D. 1994).

First, Gamma argues the trial court abused its discretion in admitting the letter of registration because Cannon failed to specifically plead it was registered with and had obtained a certificate of authority from Missouri's Board for Architects, Professional Engineers, and Surveyors. Gamma overlooks the first paragraph of Cannon's petition, in which Cannon alleges it is "a Missouri corporation registered to practice architecture and professional engineering." Giving the pleadings broad construction and affording all reasonable inferences from the facts pled, *see Forde v. Forde*, 190 S.W.3d 521, 529 (Mo. App. E.D. 2006), we conclude Cannon sufficiently pled it is registered with the State Board for Architects, Professional Engineers, and Surveyors to practice architecture and engineering, and the letter of registration was within the scope of the pleadings.

Additionally, Gamma argues the admission of the letter was prejudicial because Gamma based its defense at trial in part upon Cannon's failure to plead and produce evidence that it had registered with the Board prior to beginning its work for HH St. Louis. Gamma's prejudice argument fails for several reasons. First, as already stated, Paragraph 1 of Cannon's petition forthrightly pled that Cannon is "a Missouri corporation registered to practice architecture and professional engineering." Second, Cannon's vice president testified at trial that Cannon is registered to practice architecture in Missouri, rendering the later admission of the letter merely cumulative and not prejudicial to Gamma. *See Kline v. City of Kansas City*, 334 S.W.3d 632, 641 (Mo. App. W.D. 2011) (quoting *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 134 (Mo. banc 2007)) ("A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection.").

17

Gamma had the opportunity to cross-examine the vice president and challenge his testimony, but chose not to. Considering that Cannon pled and produced evidence of its registration, Gamma was not prejudiced by the admission of the letter of registration, and the trial court did not abuse its discretion in admitting the letter of registration. Gamma's Point IV is denied.

*HH St. Louis*

In its first point, HH St. Louis argues the trial court erred in entering judgment on the breach of contract claims for Concrete Strategies, Cannon, and Geotechnology ("HH claimants") because none of the HH claimants adduced substantial evidence of workmanlike performance. In its second point, HH St. Louis argues the trial court erred in awarding Concrete Strategies damages for unjust enrichment because there was no substantial evidence of a benefit conferred on HH St. Louis. In its third point, HH St. Louis argues the trial court erred in entering judgment in favor of Cannon and Geotechnology on their breach of contract claims because they failed to prove they obtained a certificate of authority from the Missouri Board for Architects, Professional Engineers, and Surveyors. In its fourth point, HH St. Louis argues the trial court erred and abused its discretion in re-opening the evidence and admitting Cannon's and Geotechnology's unauthenticated letters of registration and by denying HH St. Louis the ability to challenge the letters. In its fifth point, HH St. Louis argues the trial court erred in awarding the full amount of attorneys' fees claimed by Concrete Strategies, Cannon, and B&P Construction under the PPA. In its sixth point, HH St. Louis argues the trial court erred in awarding Geotechnology attorneys' fees because Geotechnology was not entitled to attorneys' fees pursuant to the parties' contract.

Point One

18

In its first point, HH St. Louis argues the trial court erred in entering judgment for the HH claimants and against HH St. Louis because the HH claimants failed to adduce any evidence of workmanlike performance.

In every contract to perform work, there is an implied promise the work will be completed in a workmanlike manner. *Sheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 723 (Mo. App. E.D. 2014); *see also Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 809–10 (Mo. App. E.D. 1992). In a breach of contract action, the plaintiff maintains the burden of proof in demonstrating its work was completed in a workmanlike manner. *Sheck Indus. Corp.*, 435 S.W.3d at 723. "Workmanlike performance has been defined as work which is completed in a skillful manner and is non-defective." *Id.* (quoting *Evans v. Werle*, 31 S.W.3d 489, 491 (Mo. App. W.D. 2000)) (internal quotation marks omitted).

In its breach of contract claim, Cannon alleged it provided architectural and engineering design services for the rehabilitation and repair of the Railway Exchange Building and garage. An architect has a duty "to exercise the ordinary and reasonable technical skill that is usually exercised by one in that profession." *Business Men's Assur. Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo. App. W.D. 1994). This duty was incorporated as a term of the contract between HH St. Louis and Cannon. Specifically, the contract stated, "The architect shall perform its services consistent with the professional skill and the standard of care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances." At trial, Cannon's vice president testified that, while operating under the terms of the contract, no one ever told him that Cannon's "work was insufficient or improper or incomplete" and Cannon never "receive[d] any objections to [its] percentage completions that were listed on any of [its] invoices." Further testimony showed that HH St. Louis paid some of Cannon's invoices, from which the trial court

19

could infer that Cannon completed the work in a workmanlike manner as required by the contract. Substantial evidence, and reasonable inferences drawn from that evidence, supported the trial court's conclusion that Cannon completed its work in a workmanlike manner.

Geotechnology provided engineering services to HH St. Louis. Engineers must demonstrate they followed the standard of care applicable to all other engineers in the field. *See Yantzi v. Nortion*, 927 S.W.2d 427, 432 (Mo. App. W.D. 1996). Geotechnology and HH St. Louis incorporated this standard into their contract. Specifically, the contract stated, "The standard of care for all professional engineering and related services performed under this AGREEMENT will be the care and skill ordinarily used by members of the subject profession practicing under similar circumstances at the same time and in the same locality." The authorized representative of HH St. Louis who signed the contract testified that Geotechnology's work was not materially defective in any way and was fully performed in accordance with the contract. He was not aware of anyone disputing Geotechnology's invoices and agreed that "Geotechnology did the work they were contracted to do and should be paid." Substantial evidence supported the trial court's finding that Geotechnology performed its work in a workmanlike manner.

Similarly, substantial evidence supported the trial court's finding that Concrete Strategies performed its work in a workmanlike manner. The contract between B&P Construction and Concrete Strategies stated that "all work under this Subcontract Agreement will be performed in a good and workmanlike manner, shall be of good quality, free from faults and defects, and in accordance with the Contract Documents." The contract further states, "If at any time during the warranty period, Contractor or Owner shall discover any aspect of Subcontract Work not in compliance with this warranty, then written notice shall be provided to the Subcontractor."

20

Neither HH St. Louis nor B&P Construction ever provided written notice to Concrete Strategies that its work was not performed in a good and workmanlike manner. Also, while operating under the "workmanlike standard" clause, HH St. Louis and B&P Construction paid Concrete Strategies's invoices. Payment of Concrete Strategies's later invoices ceased only because HH St. Louis failed to pay B&P Construction. Substantial evidence, and reasonable inferences drawn from that evidence, supported the trial court's finding that Concrete Strategies performed its work in a workmanlike manner.

Alternatively, HH St. Louis argues expert testimony is required to determine whether the HH claimants' work was performed in a workmanlike manner. HH St. Louis raises this argument for the first time on appeal, it is not preserved, and we do not consider it. *See Ford*, 599 S.W.3d at 268–69. Point I is denied.

<u>Point Two</u>

In its second point, HH St. Louis argues the trial court erred in awarding Concrete Strategies damages for unjust enrichment because there was no substantial evidence of a benefit conferred on HH St. Louis.

"The essential elements of unjust enrichment are '(1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit.'" *Gateway Metro Fed. Credit Union v. Jones*, 603 S.W.3d 314, 322 (Mo. App. E.D. 2020) (quoting *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. App. E.D. 2019)). Additionally, as a part of the first element, the plaintiff must show "the amount of the benefit conferred on the defendant." *Autumn Lakes Ass'n v. Tran*, 655 S.W.3d 442, 449 (Mo. App. E.D. 2022).

21

HH St. Louis contends Concrete Strategies failed to demonstrate the actual amount of the benefit conferred on HH St. Louis. It argues Concrete Strategies proved only that it performed work and provided materials of a "reasonable value." HH St. Louis's argument fails because Concrete Strategies proved the amount of benefit conferred on HH St. Louis. First, Concrete Strategies showed the actual value of its unpaid work on the garage was $378,041.35. The amount in unpaid change orders for the work on the garage was $208,368.84. The retainage amount was $59,414.56. Taken together, the total amount of the benefit conferred on HH St. Louis was $645,824.75. HH St. Louis gives us no reason on appeal to conclude the benefit conferred on HH St. Louis was any less than the actual value of Concrete Strategies's work. Thus, contrary to HH St. Louis's allegation, substantial evidence, and the reasonable inferences drawn therefrom, supported the trial court's finding of a benefit conferred on HH St. Louis and the amount of that benefit. Point II is denied.

Point Three

In its third point, HH St. Louis argues the trial court erred in entering judgment in favor of Cannon and Geotechnology on their breach of contract claims because they failed to prove they obtained a certificate of authority from Missouri's Board for Architects, Professional Engineers, and Surveyors.

HH St. Louis's argument fails because Cannon's vice president testified both he and Cannon were registered to practice architecture in the State of Missouri. Additionally, in their contract, HH St. Louis and Cannon agreed that Cannon "had not been debarred, declared ineligible or excluded by any State agency." Further, Cannon's mechanic's lien, admitted into evidence without objection, contained a letter from Cannon's attorney identifying Cannon as the "Architect

22

of Record" for the project. This amounts to substantial evidence that Cannon was registered with the State Board for Architects, Professional Engineers, and Surveyors.

Similarly, Geotechnology pled in its cross-claim petition that it is "a corporation incorporated in the State of Missouri and licensed and authorized to do business in the State of Missouri." Upon the re-opening of evidence, Geotechnology proved that fact with a letter from the Missouri Board for Architects, Professional Engineers, and Surveyors. The letter stated Geotechnology was issued a Corporate Certificate of Authority to provide engineering services in the State of Missouri and Geotechnology's license remained in good standing.

Accordingly, substantial evidence supported the trial court's finding that Cannon and Geotechnology were registered with the Board for Architects, Professional Engineers, and Surveyors. Point III is denied.

Point Four

In its fourth point, HH St. Louis argues the trial court abused its discretion in re-opening the evidence, admitting Cannon's and Geotechnology's unauthenticated letters of registration, and denying HH St. Louis the ability to challenge the letters.

As we previously observed, evidentiary rulings are reviewed for abuse of discretion. *Johnson*, 613 S.W.3d at 447. A trial court abuses its discretion in *not* re-opening a case "when there is no inconvenience to the court or unfair advantage to one of the parties. . . [and a party seeks to] introduce material evidence. . . that would substantially affect the merits of the action." *Pride*, 366 S.W.2d at 445. The trial court has broad discretion in allowing a party to re-open its case. *Lavin*, 871 S.W.2d at 465.

HH St. Louis repeats Gamma's arguments regarding the scope of the pleadings, the lack of newly discovered evidence, and alleged prejudice. HH St. Louis's arguments fail for much the

23

same reasons. In any event, the letters were self-authenticating public documents, and HH St. Louis could not have challenged their authenticity. Although "the Federal Rules of Evidence are not binding on Missouri courts, they are suggestive." *Emerson v. Garvin Grp., LLC*, 399 S.W.3d 42, 45 (Mo. App. E.D. 2013) (quoting *Boyer v. City of Potosi*, 77 S.W.3d 62, 69 (Mo. App. E.D. 2002)). Federal Rule of Evidence 902 governs self-authenticating documents. *See* FED. R. EVID. 902. Rule 902(1) provides "a document that bears: a seal purporting to be that of . . . any state, and a signature purporting to be an execution or attestation" is a self-authenticating domestic public document and "requires no extrinsic evidence of authenticity in order to be admitted." *See* FED R. EVID. 902(1). Both letters bear the official seal of the State of Missouri and the signature of the executive director and official custodian of records. They therefore were admissible, self-authenticating domestic public documents, and the trial court did not abuse its discretion in admitting them. Point IV is denied.

### Point Five

In its fifth point, HH St. Louis argues the trial court erred in awarding the full amount of attorneys' fees claimed by Concrete Strategies, Cannon, and B&P Construction under the PPA.

We review the trial court's award of attorneys' fees for abuse of discretion. *Yes Chancellor Farms, LLC v. Merkel*, 670 S.W.3d 214, 226 (Mo. App. E.D. 2023). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013) (citing *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 23 (Mo. banc 2012)).

"The general rule in Missouri is that attorney fees are not awarded to every successful litigant." *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444, 445 (Mo. banc 2010)

24

(citing *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo. banc 1989)). "Attorney fees are recoverable in two situations: when a statute specifically authorizes recovery and when the contract provides for attorney fees." *Lucas Stucco*, 324 S.W.3d at 445 (citing *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 657 (Mo. banc 2009)).

Here, there is no contract providing for attorneys' fees. The applicable statute is Section 431.180, which provides:

> 1. All persons who enter into a contract for private design or construction work after August 28, 1995, shall make all scheduled payments pursuant to the terms of the contract.

> 2. Any person who has not been paid in accordance with subsection 1 of this section may bring an action in a court of competent jurisdiction against a person who has failed to pay. The court may in addition to any other award for damages, award interest at the rate of up to one and one-half percent per month from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party.

This section provides the trial court with the authority, in its discretion, to award attorneys' fees. *Structure & Design, Unlimited, Inc. v. Contemp. Concepts Bldg. & Design, Inc.*, 151 S.W.3d 904, 910 (Mo. App. W.D. 2004); *see also Lucas Stucco*, 324 S.W.3d at 445–46. This Court must give the statutory language its plain and ordinary meaning. *Brock v. Dunne*, 637 S.W.3d 22, 28 (Mo. banc 2021). "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Id.* (quoting *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013)). Specifically, subsection 2 of Section 431.180 states the "court may in addition to any other award for damages, award . . . reasonable attorney fees, to the prevailing party." Based on the entire record and the invoices submitted, the trial court found the fees were reasonable and necessary, and resulted from HH St. Louis's failure to make scheduled payments under Section 431.180. HH St. Louis has not shown the trial court's award of attorneys' fees to Concrete

25

Strategies, Cannon, and B&P Construction was an abuse of discretion. *See Berry*, 397 S.W.3d at 431. Point V is denied.

<u>Point Six</u>

Lastly, HH St. Louis argues the trial court erred in awarding Geotechnology attorneys' fees because Geotechnology was not entitled to attorneys' fees under the terms of their contract. HH St. Louis did not raise this issue before the trial court, the issue is not preserved for appeal, and we do not consider it. *See Ford*, 599 S.W.3d at 268–69.

HH St. Louis's Point VI is denied.

**Conclusion**

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We reverse that portion of the judgment enforcing Custom Construction's lien on the Railway Exchange Building and parking lot. We remand the cause to the trial court with instructions to vacate only that portion of the judgment enforcing Custom Construction's lien against the Railway Exchange Building and parking lot. The remainder of the judgment is affirmed.

_____
Cristian M. Stevens, J.

Robert M. Clayton, III, P.J., and
Philip M. Hess, J. concur.

26